## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JUSTIN ATTAWAY, SAM FUENTES, MARTIN FUENTES, WILLIAM RIVERA, TEDDY MARRERO, and VICTOR E. ALONSO AGUIRRE, | ) ) ) ) | |
| | ) | Case No. 3:11-cv-00803 |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| BAY INDUSTRIAL SAFETY SERVICES, INC., SHAW ENERGY & CHEMICALS, INC., JENNIE RICH, and WILLIAM GLENN PARKER, | ) ) ) ) | |
| Defendants. | ) ) | |

### PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON THEIR FAIR LABOR STANDARDS ACT AND ILLINOIS MINIMUM WAGE LAW CLAIMS

## I.    INTRODUCTION

Defendants failed to pay Plaintiffs overtime wages at the rate of one-and-one-half times their regular rate of pay for the time they worked in excess of forty (40) hours in individual workweeks.  Instead, Defendants paid Plaintiffs their straight time regular rate of pay for all hours worked, including all time worked over forty (40) hours in individual workweeks. Because no exemption to state and federal overtime laws apply to their employment by Defendants, Plaintiffs Justin Attaway, Sam Fuentes, Martin Fuentes, William Rivera, Teddy Marrero, and Victor Alonso (hereinafter "Plaintiffs") are entitled to judgment as a matter of law on their Count I and II claims arising under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207, and the Illinois Minimum Wage Law ("IMWL") 820 IICS § 105/4a.

For the reasons more fully explained below, Plaintiffs are entitled to a judgment against

Defendants Bay Industrial Services, Inc. ("Bay"), William Glenn Parker ("Parker"), Jennie Rich ("Rich"), and Shaw Energy & Chemicals, Inc. ("Shaw") (collectively referred to as "Defendants"), in the amount of $122,845.25 in owed overtime wages, an equal amount ($122,845.25) in liquidated damages, plus interest ($64,784.94) under the IMWL, for a total judgment amount of $310,475.43.

## II.    BACKGROUND FACTS

See Plaintiffs' Statement of Undisputed Facts ("Stmt. of Facts"), filed contemporaneously herewith.

## III.    JURISDICTION

This Court has jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331, and has supplemental jurisdiction over their IMWL claims under 28 U.S.C. § 1367(a).  Stmt. of Facts ¶ 1.  Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in this judicial district because the events giving rise to this matter occurred in Robinson, Illinois.  Stmt. of Facts, ¶ 2.

## IV.    APPLICABLE LEGAL STANDARD

A moving party is entitled to summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. Rule 56(c); *See also Celotex Corp. v Catrett*, 477 U.S. 317, 322 (1986).

V.     **ARGUMENT**

    A.     **Defendants Are "Enterprises" Under the FLSA And Plaintiffs' "Employers" Under the FLSA And IMWL.**

        1.     **Defendants Bay And Shaw Are "Enterprise(s)" Under The FLSA.**

An entity is an "enterprise" covered under the provisions of the FLSA if it (1) "has employees engaged in commerce or in the production of goods for commerce, or [if it] has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person"; and (2) "is an enterprise whose annual gross volume of sales made or business done is not less than $500,000, exclusive of excise taxes as the retail level that are separately stated." 29 U.S.C. § 203(s)(1)(A)(i)-(ii).  Defendant Shaw admits it is an "enterprise" as defined by the FLSA.  Stmt. of Facts, ¶ 19.  Bay admits that its annual gross volume of sales or business done exceeds $500,000. Stmt. of Facts, ¶¶ 4, 5. And, Plaintiffs' construction work at the Marathon Oil Refinery in Robinson, Illinois easily satisfies the commerce requirement of the enterprise test.[1] *Donovan v. Tehco, Inc*., 642 F.2d 141, 24 WH Cases 1362 (5th Cir. 1981) (determining employees who build, maintain, and rehabilitate gasoline service stations under contract with oil company were engaged in interstate commerce). *Donovan v. Pointon*, 717 F.2d 1320, 1322–23 (10th Cir. 1983) (determining employer that engaged in clearing raw land for development was covered enterprise because employees— in readying land for building—handled goods and materials such as construction equipment and replacement parts that had moved in interstate commerce).

---

[1] *Donovan v. S & L Dev. Co*., 647 F.2d 14, 17. n.5, (9th Cir. 1981) ("It is well established that the Act's coverage provisions are to be construed broadly to apply to the furthest reaches consistent with congressional direction."); *see also Wirtz v. Modern Trashmoval*, 323 F.2d 451, 456, (4th Cir. 1963) (stating FLSA coverage based on activities of employee "governed by practical considerations rather than technical conceptions"), *cert. denied*, 377 U.S. 925, (1964); 29 C.F.R. §776.9 (observing courts interpret "in commerce" provision consistent with its practical meaning in particular cases to effectuate intent of Congress).

### 2.   Defendants Are Plaintiffs' "Employer(s)" And Are Jointly Responsible For Their Violation Of The FLSA And IMWL.

The FLSA defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d)(emphasis added). An employer "employs" someone if he "suffer[s] or permit[s]" the individual to work. *Id.* at § 203(g). The United States Supreme Court noted the FLSA defines the employment relationship "expansively" and with a "striking breadth." *Nationwide Mut'l Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992); *U.S. v. Rosenwasser*, 323 U.S. 360, 363 n.3 (1945) (the FLSA's definition of employment is "the broadest definition that has ever been included in any one act.").

The concept of employment under the FLSA is not limited by formalistic or common law definitions. *Goldberg v. Whitaker House Coop.*, 366 U.S. 28, 33 (1961); *McLaughlin v. Seafood, Inc.*, 867 F.2d 875, 877 (5th Cir. 1989). More than one person (entity and/or individual) can be the "employer" of an employee under the FLSA. *Falk v. Brennan*, 414 U.S. 190, 195 (1973) (maintenance workers at apartment complex were employees of management company as well as the building owners); *Martin v. Bedell*, 955 F.2d 1029, 1034 (5th Cir. 1992) (under FLSA an individual can be employed by more than one employer). *See also* 29 C.F.R. § 791.2(a) (2003) ("A single individual may stand in the relation of an employee to two or more employers at the same time under the Fair Labor Standards Act of 1928 . . . ."). Ultimately, the FLSA "is intended to identify responsible parties without obfuscation by legal fictions applicable in other contexts." *Dole v. Simpson*, 784 F.Supp. 538, 545 (S.D. Ind. 1991).

In all FLSA cases the same defining principle is used to determine who is an employer: An entity "employs" an individual under the FLSA "if, as a matter of economic reality, the individual is dependent on that entity." *Charles v. Burton*, 169 F.3d 1322, 1328 (11th Cir. 1999); *Antenor v. D & S Farms*, 88 F.3d 925 (11th Cir. 1996) (quoting *Goldberg v. Whitaker House*

*Coop, Inc.*, 366 U.S. 28, 34 (1961)); *Accord, Brock v. Mr. W Fireworks,* 814 F.2d 1042 (5th Cir. 1987).  In evaluating a potential joint employment relationship in a case like this, courts should "examine the economic realities of the relationship among the workers, the contractor, and the [company]." *Beliz v. W.H. McLeod & Sons Packing Co.,* 765 F.2d 1317, 1327 (5th Cir. 1985). Workers are considered employees of a business to which they render service, if as a matter of economic reality they are dependent on that business. *Id.*

In the context of contracted for labor – like in this case – if the court finds that the employees in question are partially dependent on the staffing agency *and* partially dependent on the principal company, then *both* contractor and the staffing agency are considered joint employers, and both are responsible for ensuring compliance with the wage requirements of the FLSA. *Moldenhauer v. Tazewell-Pekin Consol. Commc'ns Ctr.,* 536 F.3d 640, 644-45 (7th Cir. 2008) (in FMLA case, stating that "joint employment will ordinarily be found to exist when a temporary or leasing agency supplies employees to a second employer."); *Bastian v. Apartment Inv. & Mgmt. Co.,* 07 C 2069, 2008 WL 4671763 (N.D. Ill. Oct. 21, 2008) (finding joint employment where leasing agencies provide defendant with workers, but defendant determines the amount it will pay, including overtime, the total number of hours it needs filled, and provides the workspace and equipment).  In "joint employment" cases the question is not whether the worker is *more* economically dependent on the independent contractor or the principal company, with the winner avoiding responsibility as an employer.  As the term "joint employment" suggests, the FLSA economic reality test envisions situations where a single employee will have the necessary employment relationship with not just one employer, but will simultaneously have such a relationship with two employers – both the principal company and the staffing agency. *Moldenhauer, supra; Bastian, supra.*  Thus, rather than comparing the employment relationships

5

with the company versus the staffing agency in order to exclude one, the focus should be on each employment relationship as it exists between the worker and each party asserted to be a joint employer. *Antenor*, 88 F.3d 925, 932; *Charles,* 169 F.3d 1322, 1328.

### a.   Defendants Bay, Parker, And Rich Were Plaintiffs' "Employers" As Defined Under The FLSA And The IMWL.

Defendants admit that Bay was Plaintiffs' "employer" under the FLSA, 29 U.S.C. § 203(d), and IMWL, 820 ILCS § 105/3(c). Stmt. of Facts ¶ 6. Likewise, Plaintiffs were Parker and Rich's "employees" during their work at the Marathon Refinery.  Stmt. of Facts, ¶ 12. Individuals with ownership interests, involvement in supervision and payment of employees, and day-to-day control of operations are personally liable for violations under the FLSA. " *Cardenas v. Grozdic*, No. 12 C 292, 2012 WL 2359399, at *2 (N.D. Ill. June 20, 2012), citing *Solis v. Intern. Detective & Protection Services, Ltd.*, 819 F. Supp. 2d 740, 748 (N.D. Ill. 2011). The question is whether the individual in question had "supervisory authority over the complaining employee" and is "responsible in whole or part of the alleged violation.*"  Hernandez v. City Wide Insulation of Madison, Inc.*, No. 05-C-303, 2006 U.S. Dist. LEXIS 48399, at *5 (E.D. Wis. July 14, 2006) quoting *Riordan v. Kempiners*, 831 F.2d 690, 694 (7th Cir. 1987).

Defendant Parker is the founder and President of Bay.  Stmt. of Facts, ¶¶ 9, 10. Defendants admit that Parker had and exercised the authority to hire and fire employees, to direct and supervise employees' work, to sign on payroll accounts, and to participate in decisions regarding employee compensation and capital expenditures.  Stmt. of Facts, ¶ 10. Parker had day-to-day operational responsibility for Bay, and he maintained an office at the Marathon Refinery during the period Plaintiffs worked there.  Stmt. of Facts, ¶¶ 10, 13, 14.  Based on his operational control of Bay, Parker was Plaintiffs' employer under the FLSA.  *Solis v. Saraphino's, Inc.*, No. 09-CV-954, 2011 U.S. Dist. LEXIS 43904, at *9 (E.D. Wis. April 22,

2011) quoting *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983) ("The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages.")

Defendant Rich, Bay's Office Manager, was also Plaintiffs' employer under the FLSA. Rich had and exercised the authority to hire and fire employees, to direct and supervise employees' work, to sign on payroll accounts, and to participate in decisions regarding employee compensation and capital expenditures. Stmt. of Facts, ¶ 11. Rich had day-to-day operational responsibility for Bay and served as Defendant Shaw's point of contact with the company. Stmt. of Facts, ¶¶ 13, 15. Rich submitted Plaintiffs' resumes to Shaw for initial hire and proposed initial pay rates for Plaintiffs. Stmt. of Facts, ¶¶ 15, 16. She invoiced Shaw for Plaintiffs' work at the Marathon Refinery, and Plaintiffs reported their work hours to her. Stmt. of Facts, ¶ 17. *See Downs v. Gebco Machine, Inc*., 873 F. Supp. 2d 1010, 1012-13 (S.D. Ill. 2012) (term "employer" under the FLSA is broad enough to permit naming another employee as a defendant)[2]

### b.   Shaw Was Plaintiffs' "Employer" Under The FLSA And IMWL.

The economic reality of the business relationship between Plaintiffs and Shaw confirms that Shaw was also Plaintiffs' "employer" under the FLSA. Plaintiffs were hired to work regularly and exclusively for Defendant Shaw at the Marathon Refinery. Stmt. of Facts, ¶ 52.

---

[2] The test for individual liability under the IMWL is the same as under the FLSA. *Arteaga v. Lynch*, 10 C 1444, 2012 WL 3879899, at *17 (N.D. Ill. Sept. 6, 2012) (the court's analysis of Plaintiffs' FLSA claims applies to their IMWL claims because the two statutes are substantively congruent. Citing *Condo v. Sysco Corp.*, 1 F.3d 599, 601 n.3 (7th Cir. 1993); *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, No. 00 C 5755, 2004 WL 1882449 at *4 (N.D. Ill. Aug. 18, 2004)). Thus, because Defendants Parker and Rich were Plaintiffs' "employers" as that term is construed under the FLSA, they are also employers under the IMWL.

Shaw reviewed and approved Plaintiffs' applications for employment to perform work for it at the Marathon Refinery.  Stmt. of Facts, ¶ 28.  Shaw controlled whether Bay hired Plaintiffs – if Shaw had denied Plaintiffs' applications for employment, Bay would not have hired them.  Stmt. of Facts, ¶ 29. Shaw also had the right under the Master Service Agreements with Bay to unilaterally terminate Plaintiffs' employment at the Marathon Refinery. Stmt. of Facts, ¶ 30. And, according to the deposition testimony of Defendant Rich, termination from Shaw would have also resulted in termination of Plaintiffs' employment with Bay.  Stmt. of Facts, ¶ 31.

Shaw provided Plaintiffs with a safety handbook and free tools and equipment, including tape measures, safety glasses, hard hats, fire protective clothing, steel-toed work boots, papers, pencils, calculators and computers. Stmt. of Facts, ¶ 43, 44.  Shaw also provided Plaintiffs with a general orientation, and gave Plaintiffs Shaw email accounts to use during their employment at the Marathon Refinery. Stmt. of Facts, ¶¶ 43, 50.

Shaw employees exclusively supervised and controlled Plaintiffs' job duties and responsibilities and Shaw determined what job duties they performed on a daily basis.  Stmt. of Facts, ¶ 32, 46.  Bay did not have any authority to dictate or alter Plaintiffs' job duties or responsibilities. Stmt. of Facts, ¶ 46.   Shaw managers and employees supervised Plaintiffs' day-to-day work at the Marathon Refinery and controlled all other terms of their employment. Stmt. of Facts, ¶ 32, 33. Shaw determined Plaintiffs' job titles and work schedules. Stmt. of Facts, ¶¶ 35, 36. Shaw required Plaintiffs to record their time worked using a Shaw electronic timekeeping program known as Shaw Time.  Stmt. of Facts, ¶ 47. Defendant Bay did not maintain its own independent time records for Plaintiffs, but instead relied on Shaw Time records for payroll purposes.  Stmt. of Facts, ¶ 47.

Shaw determined the regular hourly rate of pay at which Plaintiffs were paid for their labor, including that Plaintiffs be paid their straight time – not overtime – for the time they worked in excess of 40 hours in individual work weeks. Stmt. of Facts ¶ 37, 40.  Bay did not have the authority to change Plaintiffs' regular rates of pay without first getting Shaw's approval. Stmt. of Facts ¶ 42.  And, it was Shaw – not Bay – that improperly classified Plaintiffs as exempt from the overtime provisions of the FLSA and IMWL. Stmt. of Facts, ¶ 37, 39.

Shaw was Plaintiffs' "employer" under the FLSA and IMWL.  *Bastian*, 2008 WL 4671763, at *3, citing *Moldenhauer,* 536 F.3d at 644

### c. Defendants Are Plaintiffs' "Joint Employers" Under The FLSA And IMWL.

The Seventh Circuit has not formally adopted any test whereby application of a specific set of factors would determine the issue of joint employment. *Bastian, supra,*  2008 WL 4671763, at *2 (N.D. Ill. Oct. 21, 2008).  "Recently, however, in deciding an issue of joint employment under the Family and Medical Leave Act, the court applied FLSA case law, noting that the joint-employer regulation in the FLSA mirrors that in the FMLA." *Id*, citing *Moldenhauer,* 536 F.3d 640, 644 (7th Cir.2008).  Although indicating that the factors that the other circuits have used to analyze the *amount* of control an employer exercised over an employee were relevant to the determination of a joint-employer relationship, the Seventh Circuit refused to hold that those were the only relevant factors or even the most important. *Moldenhaue*r, 536 F.3d at 644 (emphasis in original).  Instead, the Seventh Circuit held generally "that for a joint-employer relationship to exist, each alleged employer must exercise control over the working conditions of the employee, although the ultimate determination will vary depending upon the specific facts of each case." *Bastian*, 2008 WL 4671763, at *3, citing *Moldenhauer,* 536 F.3d at 644.

9

The *Moldenhauer* court indicated that it was guided by the Sixth Circuit's opinion in

*Grace v. USCAR,* 521 F.3d 655 (6th Cir.2008). The plaintiff in *Grace,* like the Plaintiffs in this

case, worked for a staffing agency and was assigned to work at a design firm. At all times the

plaintiff remained on contract with the staffing agency, receiving her pay and benefits from it.

The design firm supervised the plaintiff's day-to-day activities and determined her salary and

hours. As the *Moldenhauer* court noted, the Sixth Circuit "found that a joint-employment

relationship existed because both employers maintained control over the employee."

*Moldenhauer,* 536 F.3d at 644 (citing *Grace,* 521 F.3d at 660-67). The court then contrasted the

Ninth Circuit's opinion in *Moreau v. Air France,* 343 F.3d 1179 (9th Cir.2003), which held that

an airline that contracted for the provision of ground services at the airport was not a joint

employer of the plaintiff because the airline did not maintain any authority to control the

workers. It could not hire or fire employees, determine salaries or direct day-to-day activities.

Instead, the airline only evaluated whether the contracted for services were supplied

satisfactorily. *Moldenhauer,* 536 F.3d at 644.

"Joint employment [is] ordinarily [] found to exist when a temporary or leasing agency

supplies employees to a second employer. *Moldenhauer,* 536 F.3d at 644-45 (quoting 29 C.F.R.

§ 825.106(b)).  Here, like in *Grace*, Defendants Bay, Parker and Rich supplied Defendant Shaw

employees, but Shaw had the authority to hire and fire Plaintiffs (Stmt. of Facts, ¶¶ 28, 29, 30,

31); determined the rate at which Bay paid Plaintiffs (Stmt. of Facts, ¶¶ 40, 42); told Plaintiffs

what time to report to work and when they could stop working for the day (Stmt. of Facts, ¶¶

35); dictated Plaintiffs' day-to-day job duties and responsibilities (Stmt. of Facts, ¶ 46); and

supervised Plaintiffs' daily work at the Marathon Refinery (Stmt. of Facts, ¶ 32).  Importantly, it

was Shaw that determined Plaintiffs' exempt status for purposes of the FLSA and IMWL.  Stmt. of Facts, ¶ 37.

Based on the record evidence, Defendants were Plaintiffs' joint employer. *Bastian, supra*, 2008 WL 4671763 at *4.

**B.      Defendants Violated The FLSA And The IMWL When They Failed To Pay Plaintiffs Overtime Wages In Workweeks Where They Worked More Than Forty Hours.[3]**

**1.      Plaintiffs Worked More Than Forty Hours In One Or More Individual Workweeks.**

Under the overtime provisions of the FLSA and IMWL, employers are required to pay covered employees at one-and-one-half times their regular rate for all time worked in excess of forty (40) hours in individual workweeks.  29 U.S.C.§ 207(a)(1); 820 ILCS § 105/4a(1). Plaintiffs were directed by Defendants to work, and did work, more than forty (40) hours in individual work weeks.  Stmt. of Facts, ¶ 53.

**2.      Plaintiffs Were Paid Straight Time, Not Overtime, For Time They Worked In Excess Of 40 Hours In Individual Work Weeks.**

Plaintiffs were paid their regular straight time hourly of pay – not overtime – for  all time they worked for Defendants, including all time that they worked in excess of forty (40) hours in individual workweeks. Stmt. of Facts, ¶ 55.

**3.      Defendants Violated The FLSA And IMWL By Failing To Pay Overtime Wages**

Employers are required by the FLSA to pay covered, nonexempt employees at a premium rate of one and one-half times their "regular rate" for all time worked in excess of 40 hours during any given workweek. 29  U.S.C. §207(a); 820 ILCS 105/4(a).  Defendants admit they

---

[3] Defendants Bay, Parker and Rich failed to answer Count II of Plaintiffs' Third Amended Complaint, alleging that Defendants violated the overtime provisions of the IMWL.  Plaintiffs are filing contemporaneously herewith a motion for default against Bay, Parker, and Rich with regard to Count II of the Third Amended Complaint.

failed to pay such overtime compensation to Plaintiffs. Thus, unless Defendants can affirmatively prove that Plaintiffs were exempt from the overtime provisions of the FLSA and IWML, Plaintiffs are entitled to judgment.

### 4.    Plaintiffs Were Not Exempt From The Overtime Provisions Of FLSA And IMWL.

Defendants have asserted the affirmative defenses that Plaintiffs are exempt from the maximum hour provisions of the FLSA and IMWL under the executive, administrative , and professional employee exemptions to the FLSA and IMWL .[4] Stmt. of Facts, ¶ 79; 29 C.F.R. §§ 541.100, 541.200, 541.300.  Defendants' affirmative defenses have no merit.

The exempt or non-exempt status of an alleged executive, administrative , and/or professional employee must be determined on the basis of whether the employee is paid on a salary or fee basis *and* also meets the job duties test of the applicable regulations."  29 C.F.R § 541.2 (post–2004)); §§ 541.100(a)(1), 541.200(a)(1), 541.300(a)(1).[5]  Because Plaintiffs were paid on an hourly – and not a salary basis – no exemptions to the overtime laws apply to Plaintiffs' employment.

### a.    Plaintiffs Were Paid On An Hourly Basis.

An employee is paid on a "salary basis" if he regularly receives a predetermined amount each pay period "which amount is not subject to reduction because of variations in the quality or

---

[4] ECF No. 79 (Shaw's Answer to Plaintiff's Third Amended Complaint, Eighth Affirm. Def.; ECF No. 80 (Bay's Answer to Plaintiff's Third Amended Complaint, Third Affirm. Def.).

[5] The IMWL does not follow the current federal regulatory scheme for white-collar workers.  ).  Amid concerns that the USDOL's 2004 Final Rules for the white-collar exemptions would cause an estimated 375,000 people in Illinois to lose overtime rights, then State Senator (now United States President) Barack Obama introduced Senate Bill 1645 in the Illinois General Assembly.  The bill preserved the rules for white-collar exemptions under the FLSA to the regulations in effect on March 30, 2003, except to incorporate any subsequent increase in the salary thresholds.  The March 30, 2003, regulatory exemptions are narrower than those under the current FLSA, and under Section 210.100 of the Illinois Administrative Code, the stricter of the two laws applies.  ILL. ADMIN. CODE tit. 56, § 210.100. Thus, if Plaintiffs are non-exempt under FLSA, they are necessarily non-exempt under the IMWL.

quantity of the work performed." 29 C.F.R. § 541.602(a). That is, an employee must receive his full salary for any week in which the employee performs any work without regard to the number of days or hours worked. *Id.*

Defendants Bay, Parker and Rich *admit* that Plaintiffs were paid on an hourly basis. Stmt. of Facts, ¶ 54. Shaw claims to be "totally clueless" as to how Plaintiffs were paid, but "believes" that Plaintiffs were paid on an hourly basis. Stmt. of Facts, ¶ 54. In fact, all of the record evidence shows that Plaintiffs were paid on an hourly basis, not a salary (Stmt. of Facts, ¶ 54.1), that Plaintiffs' compensation fluctuated based on the number of hours that Plaintiffs' worked each week, both above and below 40 hours (Stmt. of Facts ¶ 60), that Plaintiffs were not promised and were not paid a minimum weekly guarantee (Stmt. of Facts, ¶ 57), and that Plaintiffs were subject to and actually suffered from partial day pay deductions. Stmt. of Facts, ¶¶ 57-66.

Because Plaintiffs were paid on an hourly – and not a salary basis – the Court need not determine whether their job duties meet the requirements of any of the white-collar exemptions. *See Bongat v. Fairview Nursing Care Center, Inc.,* 341 F. Supp. 2d. 181, 186 (E.D.N.Y. 2004)("Since defendant has not demonstrated that plaintiffs were paid on a salary basis, an analysis of the duties test is unnecessary").[6]

> **b.**   **Plaintiffs Were Not Paid On A Salary Basis Because They Were Not Guaranteed A Minimum Amount Of Compensation Or A Minimum Number Of Hours Each Workweek.**

Further confirming that Plaintiffs were not paid on a salary basis is Defendants' testimony that Plaintiffs received no minimum amount of weekly guaranteed compensation. Stmt. of Facts, ¶ 57. Plaintiffs were not instructed to record a minimum number of hours per

---

[6] There is no evidence, however, that Plaintiffs meet the job duty requirements of the FLSA and IWML's white collar exemptions.

week in Shaw Time for compensation purposes; instead they were expected to record the number of hours they actually worked each day.  Stmt. of Facts, ¶ 56.  Plaintiffs were then paid a fluctuating amount of pay based on the amount of work available and number of hours they actually worked for Defendants each week. Stmt. of Facts, ¶ 60.  Plaintiffs' payroll documents and the Parties' stipulations confirm that Plaintiffs were paid a fluctuating number of hours or work each week based on their regular rate of pay multiplied by the number of hours reported on their Shaw Time sheet for each week they worked.  Stmt. of Facts, ¶¶ 61-66.

### c.    Plaintiffs Were Subjected To Partial Day Pay Deductions.

An employee is not paid on a salary basis if their pay is docked for partial day absences or based on the quantity of the work available.  *Demos v. City of Indianapolis*, 302 F.3d 698, 701 (7th Cir. 2002)(If an employee's salary is docked for partial-day absences, the regulations presume that the employee is not paid on a salary basis"); *Piscione v. Ernst & Young, L.L.P.*, 171 F.3d 527, 534 (7th Cir. 1999); 29 C.F.R. § 541.602(a) (an employee is not paid on a salary basis if deductions from the employee's predetermined compensation are made for absences occasioned by the employer or by the operating requirements of the business.). [7]

Because Defendants concede that Plaintiffs were paid on an hourly basis – which is confirmed by all the record evidence – an analysis of whether Plaintiffs were subjected to partial day docking is not necessary.  *Negri v. Koning & Assoc.,* No. H037804, 2013 WL 2097418, at *4 (Cal. Ct. App. May 16, 2013)("But the actual deduction issue does not arise unless the employer

---

[7]  See also, *Zelenika v. Commonwealth Edison Co.*, No. 09 C 2946, 2012 WL 3005375, at *10 (N.D. Ill. July 23, 2012)("Generally, an employer cannot deduct pay for an exempt employee's absences of less than one day, such as when an employee arrives late or leaves early").  *See also O'Grady v. Catholic Health Ptnrs. Servs.*, No. 00-C-7144, 2002 U.S. Dist LEXIS 2182, at *18 (N.D. Ill. Feb. 13, 2002)(employee's classification as a "salaried employee" is considered suspect when the employer deducted her pay for any day that she worked less than eight hours).

at least attempted to pay the employee on a salary basis.  Here, defendant affirmatively states that it did not pay a 'guaranteed salary'").

Even if this Court were to conclude, however, that some facts suggest that Plaintiffs were paid on a salary basis, Shaw's time and Bay's payroll documents confirm that all Plaintiffs were subjected to partial-day payroll deductions.  Stmt. of Facts, ¶¶ 61-66.

Plaintiff Justin Attaway was subjected to partial-day deductions on nineteen (19) separate occasions.  Stmt. of Facts, ¶ 66.  Teddy Marrero was subjected to partial-day deductions on 3 separate occasions (Stmt. of Facts, ¶ 62) ; Victor Alonso was subjected to partial day deductions on 3 occasions (Stmt. of Facts, ¶ 63); Sam Fuentes was subjected to partial day deductions on 4 occasions (Stmt. of Facts, ¶ 64); Martin Fuentes was subjected to partial-day deductions on 4 separate occasions (Stmt. of Facts, ¶ 65); and William Rivera was subjected to partial-day deductions on 1 occasion (Stmt. of Facts, ¶ 61).  These partial-day deductions reflect the payment of wages on an hourly, not a salary basis.  29 C.F.R. § 541.603(a)("An employer who makes improper deductions from salary shall lose the exemption if the facts demonstrate that the employer did not intend to pay employees on a salary basis. An actual practice of making improper deductions demonstrates that the employer did not intend to pay employees on a salary basis"); *Martin v. Malcolm Pirnie, Inc.,* 949 F.2d 611, 615 (2d Cir.1991) ("[A]n employee who can be docked pay for missing a fraction of a workday must be considered an hourly, rather than a salaried, employee." (citations omitted)).

**C.    Plaintiffs Are Entitled To Judgment As A Matter Of Law On Their Overtime Wage Claims In The Amount Of $310,475.43.**

Defendants Bay, Rich and Parker stipulated to the number of hours Plaintiffs worked for Defendants and the amounts that Plaintiffs were paid for each hour of work.[8]  As explained below, the amount of overtime wages Plaintiffs are owed is a product of simple mathematical calculation.

**1.    Plaintiffs Are Owed $122,845.24 In Unpaid Overtime Wages.**

Defendants paid each Plaintiff a regular hourly rate of pay for each hour they worked. Stmt. of Facts, ¶ 55.  All hours worked in excess of forty (40) in individual workweeks should have been paid at an additional one-half times Plaintiffs' regular rates of pay.  29 C.F.R. § 778.112.  Therefore, the overtime calculation for each Plaintiff is as follows:

Plaintiff's Reg. Hourly Pay Rate (Reg. Rate)        = Stipulated

Total Hours Worked Each Week – 40            = Overtime Hours (OT Hours)

Reg. Rate * 0.5 * OT Hours                = Owed OT

Stmt. of Facts, ¶ 67.

Applying this formula using the total hours Plaintiffs worked for Defendants and using the regular rate which each Plaintiff was paid, Plaintiffs are owed the following amounts in unpaid overtime wages:

Justin Attaway        = $15,788.44

Sam Fuentes        =$39,199.88

Martin Fuentes        =$31,128.00

---

[8] Defendant Shaw stipulated to (a) all pay periods during which Plaintiffs' reported any hours worked as an employee of Bay Industrial Safety Services and during which he was assigned to perform work for Shaw at the Marathon Refinery site in Robinson Illinois, and (b) the total hours Plaintiffs reported having worked in each pay period as an employee of Bay Industrial Safety Services and during which he was assigned to perform work for Shaw at the Marathon Refinery site in Robinson Illinois. ECF No. 74.

| | |
|---|---|
| William Rivera | =$16,519.53 |
| Teddy Marrero | =$15,896.16 |
| Victor Alonso | =$4,313.25 |

Stmt. of Facts, ¶¶ 68-73.

### 2.    Plaintiffs Are Entitled To Liquidated Damages Under The FLSA And Interest Under The IMWL.

#### a.    Plaintiffs Are Entitled To $122,845.25 In Liquidated Damages

Unless the employer can establish that its failure to pay overtime (1) was in good faith, and (2) that it had reasonable grounds for believing that its act or omission did not violate the FLSA, liquidated damages are mandatory.  29 U.S.C. § 216(b)(an employer who violates the overtime compensation provisions of the FLSA "shall be liable" for liquidated damages in an amount equal to unpaid back wages); *Walton v. United Consumers Club*, 786 F.2d 303, 310 (7th Cir. 1986)("Doubling is not some disfavored 'penalty.' … Double damages are the norm, single damages the exception, the burden on the employer."); *Avita v. Metropolitan Club of Chicago, Inc.*, 49 F.3d 1219, 1223 (7th Cir. 1995)(Under the FLSA, double damages are the norm; single damages the exception).

Defendants cannot establish the affirmative defense of good faith. They cannot establish that their failure to pay overtime (1) was in good faith, and (2) that it had objectively reasonable grounds for believing that its act or omission did not violate the FLSA.  *Castro v. Chicago Housing Auth.*, 360 F.3d 721, 730 (7th Cir. 2004). The first prong is a subjective test.  *Horan v. King County, Washington*, 740 F. Supp. 1471, 1481-82 (W.D. Wash. 1990).  The second prong is an objective standard.  *Id*.  To satisfy the objective portion of the test, the employer must prove that its failure to obey the FLSA was predicated on such reasonable grounds that it would be unfair for the Court to impose a more than compensatory verdict.  *Id*.  Objectively reasonable

grounds include reliance on the advice of counsel or the outcome of prior Department of Labor investigations indicating adherence to the law. *Id.*

Shaw did not seek the advice of counsel before classifying Plaintiffs as exempt employees.  Stmt. of Facts, ¶ 74.  Nor did Shaw conduct any sort of analysis or study with regard to Plaintiffs' job functions, duties, responsibilities, or compensation.  Stmt. of Facts, ¶ 75.  Bay likewise conducted no investigations or analyses regarding Plaintiffs' exempt status. Stmt. of Facts, ¶ 76.  Even if Defendants attempt to argue that they can meet the subjective portion of the affirmative defense, Defendants' testimony makes it clear that they took *no steps* to satisfy the objective prong.  Stmt. of Facts, ¶ 74, 77, 78.  Thus, Defendants cannot meet the elements of the affirmative defense of good faith, and this Court should award Plaintiffs' liquidated damages in the amount of $122,845.25.  *See Avita,* 49 F.3d at 1223.

### b.    Plaintiffs Are Entitled To $64,789.94 In Interest Under The IMWL.[9]

In addition to owed overtime pay**,** the IMWL provides employees interest on their owed overtime in the amount of two percent (2%) per month of the amount of underpayment for each month the wages remain unpaid.  820 ILCS §105/12; *Lizak v. Great Masonry, Inc.*, No. 08-C-1930, 2009 WL 3065396, at *9 (N.D. Ill. Sept. 22, 2009)(awarding Plaintiffs liquidated damages under the FLSA and 2% interest under the IMWL).  Pursuant to this formula, Plaintiffs are entitled to interest in the following amounts:

|                  |             |
|------------------|-------------|
| Justin Attaway   | $8,633.83   |
| Sam Fuentes      | $21,110.23  |
| Martin Fuentes   | $15,935.04  |
| William Rivera   | $8,539.83   |

---

[9] Interest has been calculated only through April 1, 2013. Plaintiffs will supplement their damages analysis should judgment be entered in their favor.

| | |
|---|---|
| Teddy Marrero | $8,158.61 |
| Victor Alonso | $2,408.40 |

Stmt. of Facts, ¶¶ 68-73.

## VI.    CONCLUSION

For the reasons set forth above, Plaintiffs request that judgment be granted in their favor and against Defendants on Plaintiffs' FLSA and IMWL overtime claims in the amount of $122,845.24 in owed wages, plus an equal amount in liquidated damages and $64,784.94 in interest, or a total of $310,475.43.

Respectfully submitted,

Dated:  June 11, 2013

s/Douglas M. Werman
DOUGLAS M. WERMAN
Werman Law Office, P.C.
77 W. Washington, Suite 1402
Chicago, Il 60602
312-419-1008

Attorney for Plaintiffs