UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | | |
|---|---|---|
| JUSTIN ATTAWAY, SAM FUENTES | ) | |
| MARTIN FUENTES, WILLIAM RIVERA, | ) | |
| And TEDDY MARRERO, VICTOR E. | ) | |
| ALONSO AGUIRRE, | ) | |
| *Plaintiffs* | ) | |
| v. | ) | Civil Action No. 3:11-cv-00803 |
| BAY INDUSTRIAL SAFETY SERVICES, INC., | ) | |
| SHAW ENERGY & CHEMICALS, INC., | ) | |
| JENNIE RICH, and WILLIAM GLENN PARKER, | ) | |
| *Defendants* | ) | |

**SHAW'S RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

## I.        INTRODUCTION

Summary judgment must be denied because Plaintiffs have no undisputed evidence they

were not paid on a salary basis.  Instead, the facts tell the story of six (6) highly compensated,

Construction Management employees who performed exempt duties and accepted from $104,000

to more than $165,000 a year in wages (not including generous $30,000 to $50,000 per diem and

travel allowances) for their temporary work at an oil refinery in Robinson, Illinois.  All were hired

by co-defendant Bay, a temporary staffing service, into positions with *minimum* annual salaries of

$38,796 to $59,148 per year and all were guaranteed to earn, *at minimum each week*, 40 multiplied

by their agreed upon wage rates of $27 per hour to $48 per hour ($1,080 to $1,920 per week), in

addition to compensation for hours worked over 40.  These contract supervisors worked at the

Marathon Project for up to 18 months, collected $132,000 to $245,000 each from Bay, and never

once complained about any improper deductions from their weekly guaranteed amount *until* the

project was completed.  Then, having conveniently concocted a strategy to extract additional funds

by claiming to perform non-exempt duties, one of them googled "FLSA," discovered

wermanlaw@flsa.com (counsel who Plaintiffs met for the first time at depositions 16 months after

he filed their complaint), and sued their employer Bay.  Later, fearing that Bay's pockets may not be deep enough, they added Shaw as a Defendant.

Plaintiffs, who customarily and regularly performed exempt duties and were paid more than $100,000 a year for, in their own opinion, "*not doing crap*," allege claims not based in fact and contrary to law.  The evidence clearly supports Shaw's position that Plaintiffs regularly were paid a predetermined amount (40 hours x an hourly rate each Plaintiff negotiated) not subject to deduction for quantity or quality of work, a salary well above the $455 per week statutory minimum.  And, but for a very few isolated and inadvertent instances, <u>not</u> intentional and <u>not</u> pursuant to any policy or practice, they all earned their guaranteed minimum salaries every week – and much, much more.

## II.    SUMMARY JUDGMENT STANDARD

Rule 56 imposes on Plaintiffs seeking summary judgment the burden of establishing the lack of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). The Court must "read[] the record in the light most favorable to the non-moving party."  <u>St. Louis N. Joint Venture v. P. & L Enters., Inc.</u>, 115 F.3d 262, 265 (7th Cir. 1997).  Several genuine issues for trial exist here, "such that a reasonable jury could return a verdict for [defendants]. <u>Anderson v Liberty Lobby, Inc</u>., 477 U.S. 242, 248 (1986) Viewing all evidence favorably to Defendants, and drawing all reasonable inferences from the evidence in Defendants' favor, summary judgment cannot be granted on these facts.  <u>Cincinnati v Flanders Elec. Motor Serv</u>., 40 F3d 146, 150 (7th Cir. 1994)  Once the Court determines *any* question whether Plaintiffs were paid on a salaried basis or were "highly compensated employees," all credibility determinations,  evidence weighing, and drawing reasonable inferences must be left to the jury and summary judgment must be denied. <u>Anderson</u>, 477 U.S. at 255.  Here, it is undisputed that Plaintiffs earned more than $100,000 annually, and summary judgment should be denied on that basis alone.  (Defendant's Statement of Facts Nos. 57) (hereinafter "DSOF ¶ __)  Regardless, whether there was an actual practice of

improper deductions requires a detailed, fact-based inquiry evaluating nuanced factors, an analysis not appropriate for summary disposition.  Similarly fact specific and relying on credibility determination, is whether any alleged deductions were improper and, if they were, whether they were intended, isolated, or inadvertent, and whether proper reimbursement is made.

## III.    ARGUMENT

### A.    Plaintiffs Were Highly Compensated Employees That Congress Did Not Intend The FLSA To Protect And Are Exempt On That Basis

The FLSA was enacted to remedy "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers," 29 U.S.C. § 202, by eliminating "low wages and long hours".  Rutherford Food Corp. v. McComb, 331 U.S. 722, 727 (1947).  It applies generally to modestly compensated workers, and is not intended to protect employees who are well-paid.  Nicholson v. World Business Network, Inc., 105 F.3d 1361, 1364 (11th Cir. 1997).  The salary-based test dates from an era during which whether an employee was on salary or was paid by the hour revealed much about his job. Thus, the regulations adopted the salary test as a rule-of-thumb for sorting out the kinds of employees that Congress intended the FLSA to protect from those it did not.  Nicholson, 105 F.3d at 1364.  Indeed, "[t]o extend an exemption to other than those plainly and unmistakably within its terms and spirit is to abuse the interpretative process and to frustrate the announced will of the people."  A.H. Phillips, Inc. v. Walling, 324 U.S. 490, 493 (1945).  To read the FLSA blindly, without appreciation for the social goals Congress sought, would also do violence to the FLSA's spirit.  Nicholson, 105 F.3d at 1364.  The FLSA is not designed to encourage well-paid employees like Plaintiffs to extract unearned and undeserved compensation from employers who generously and gratuitously provide additional compensation *over* the minimum salary, a practice permitted but not required for exempt employees.  § 541.118(b).

Indeed, the FLSA was enacted, according to President Franklin D. Roosevelt, to insure

3

"able bodied working men and women a fair day's pay for a fair day's work." Here, Plaintiffs negotiated far in excess of a "fair day's pay"[1] for efforts that, by their own admission, fell woefully short of constituting a "fair day's work." Justin Attaway boasted during deposition that he was essentially paid to do *nothing*:

> Q:    *Well, I've asked you about the things that you've done [working at the Marathon Project], and you basically denied doing anything. I'm asking you an open-ended question and asking you to tell me what you did do to make $130,000 and work ten hours a day*
>
>    . . .
>
> A:    *I mean, this is, bottom line is that – I can't believe I'm saying this, but I really didn't – I mean, the job could have went on without – I wasn't important. I mean, I didn't do crap. So if there was a leak in the payroll, it was probably me.*

(Ex. 10: Attaway Dep. pp. 221-222) Per 29 U.S.C § 202, The FLSA was intended to alleviate the problem of overworked and underpaid employees – no Plaintiff in this case fits that description.

Consistent with the above legislative intent, the Secretary of Labor established a short test for highly compensated employees, like Plaintiffs. Those whose "total annual compensation" exceeds $100,000 "during a 52-week period" *automatically* meet the salary-based test, 29 C.F.R. §§ 541.601(a), (b)(1); Zelenika v. Commonwealth Edicon Co., No. 09 C 2946, 2012 WL 3005375, at *10 (N.D. Ill. 2012). If an employee has not worked a full 52-week period, he still qualifies for the highly paid employee exemption if his "annualized" compensation equals no less than $100,000. Allen v. Coil Tubing Serv., L.L.C., 846 F. Supp. 2d 678, 710-11 (S.D. Tex. 2012) (citing Sarviss v. Gen'l Dynamics Info. Tech. Inc., 663 F. Supp. 2d 883, 892 (C.D. Cal 2009) (A plaintiff's "average weekly salary" that "would have led to an annual compensation" in excess of $100,000 met the salary-based test."))

Here, every Plaintiff earned at least $100,000 a year or as a *pro rata* portion of that amount for those who did not work an entire year. 29 CFR §541.601(b)(3)) Simple and straightforward

---

[1]    Plaintiffs earned f $104,524.30 to $165,206 a year on an annualized basis and guaranteed weekly salaries of $56,160 to $99, 840. (DSOF ¶ 56, 57, 58)

mathematical extrapolation of stipulated pay records (Ex. 1) establish Plaintiffs' "total annual compensation" (including non-discretionary compensation in the form of overtime payments based on the number of additional hours worked, clearly contemplated by 29 CFR § 541.601(b)(1)). Those annual totals are as follows:

- Attaway:  $109,941.20;
- M. Fuentes $142,884;
- S. Fuentes $150,776.62;
- Rivera $134,741.92;
- Marrero $165,206; and
- Alonso[2] $104, 524.30.

(Ex. 1, Bay Stipulation; DSOF ¶ 56, 57)  The only remaining question for such highly compensated employees is a simplified duty test, 29 C.F.R. § 541.601(c) ("A high level of compensation is a strong indicator of an employee's job duties.").  Because Plaintiffs' Motion  completely ignores the duties test for any exemption, the Court cannot conclude at this stage that Plaintiffs  are "non-management, production-line workers, and non-management employees in maintenance construction, and similar occupations" excluded from the highly compensated employee role. § 541.601(d).  They are not.  Like the dispatchers in <u>Zelenika</u>, Plaintiffs' work did not involve "repetitive operations with their hands, physical skill, and energy."  <u>Zelenika</u>, 2012 WL 3005375 at *12; U.S. Dept. of Labor, Fact Sheet #171:  Blue-Collar Workers and the Part 541 Exemptions. Working *with* craft labor does not suffice – Plaintiffs were not *themselves* responsible for the physical acts and tasks of electricians, welders, plumbers, or the like.  In fact, Plaintiffs *supervised* those subcontracted, unionized, craft workers, conceding they were *prohibited* from doing manual work that union workers were employed to do.  All Plaintiffs touted their experience as supervisors, superintendents, and managers, their duties and responsibilities at the Marathon Project.  (DSOF ¶ 3, 6, 7, 21,  27, 33, 39, 46, 51)  So, § 541.601 directly is applicable.  <u>See</u>

---

[2] For the period 10/4/10 to 3/7/11 when Alonso was working in an exempt position. (DSOF ¶  55)

McReynolds v. Pocahontus Corp., 192 F.2d 301 (4th Cir. 1951); W&H Op. Letter 2007-3 (project superintendent for construction projects on miscellaneous sites who oversees work of subcontractors, including union personnel and project specific personnel, is exempt).  Only one of the required exempt duties or responsibilities need be proven to claim the highly compensated exemption.  Zelinka, at *12-13 ("highly compensated employee" rule is regulatory gloss on administrative and executive exemptions that defines and delimits administrative exemption, requiring employer to prove fewer factors).  Plaintiffs clearly are exempt pursuant to the salary-basis test for highly compensated employees under § 541.601 and, as shown below, pursuant to the salary basis test for administrative or executive exemptions.  Accordingly, Plaintiffs' summary judgment motion must be denied.

**B.** **Plaintiffs Were Guaranteed Minimum Weekly Compensation, Albeit Computed On An Hourly Rate**

Plaintiffs contend that Defendants failed the salary-basis test because, (1) Plaintiffs received payments *computed* on an hourly basis; (2) allegedly, Plaintiffs were not guaranteed a minimum amount of compensation; and (3) allegedly, Plaintiffs were subject to improper deductions.[3]  As shown below, none of these arguments have evidentiary or legal support.  Rather, Plaintiffs' Brief misstates the facts, misapplies the law, and misleads the Court.

**1.** **It is entirely permissible for salary-basis exempt employees to receive earnings *computed* on an hourly basis.**

---

[3]     Obviously, the exemption tests are applied employee-by-employee, based on the actual employment experience of each individual evaluated.  (W&H Op. Letter 2003-5)  See Strait v Belcan Engineering, 911 D. Supp 2d 709, 722 (N.D. Ill 2012) (employees in different job classification do not lose exempt status based on improper deductions one employee experiences)  However, except for the range of guaranteed weekly amounts based on positions held and earnings negotiated by a particular Plaintiff, all exceeding the statutory minimum, there are numerous disputes whether Plaintiffs were paid on a salary basis.

Plaintiffs claim they were not paid "on a salary basis" because their pay was computed using hourly rates[4] and because it fluctuated based on the total number of hours that the Plaintiffs worked each week, albeit *above* the minimum guaranteed.  This argument ignores well-settled law allowing such hourly computation and fluctuation of compensation for exempt employees. 29 C.F.R. § 541.602(a) ("An employee will be considered to be paid on a 'salary basis' . . . if the employee regularly receives . . . a predetermined amount constituting *all or part* of the employee's compensation."  (emphasis added)); § 541.604(b) (as long as the employment arrangement includes a guarantee of at least $455, an exempt employee's earnings "*may be computed on an hourly . . . basis, without losing the exemption or violating the salary basis requirement*"); § 541.604(a) (if employee guaranteed at least $455 each week, employer may pay additional compensation on any basis for additional hours worked, including compensation based on "straight-time hourly amount," which, conceivably, fluctuates).

Courts repeatedly have rejected the proposition that reference to hourly rates in payroll statements affects an employee's status as a salaried employee; e.g., Levine v. Unity Health Sys., 847 F. Supp. 2d 507, 509-10 (W.D.N.Y. 2012); Anani v. CVS RX Servs., Inc., 788 F. Supp. 2d 55, 63 (E.D.N.Y. 2011).  In Kennedy v. Commonwealth Edison Co., 410 F.3d 365, 370 (7th Cir. 2005), the plaintiffs contended that because the employer tracked employee time and sometimes paid more than the guaranteed salaries, as occurred here, the fluctuations must mean that they were hourly workers.  The Court rejected that hypothesis, holding that increases in salary correlated with the number of hours worked did not render the employee's status non-exempt.  Id. at 370-71 (citing W&H Op. Letter 1738 (April 6, 1995) ("[E]xtra compensation may be paid for overtime to an exempt employee on any basis [including] at straight time")).  Neither the tracking nor accounting

---

[4]    The term "on an hourly basis," repeatedly parroted by Plaintiffs, is conspicuously absent from the FLSA or any interpretive regulations.  Plaintiffs attempt to misrepresent Defendants' testimony that Plaintiffs' guaranteed earnings were *calculated* on an hourly rate an admission they were not paid on a "salary basis."  It is not.

of actual hours worked or requiring salaried employees to record and report all hourly time worked violates the salary basis requirements.  See Douglas v. Argo-Tech Corporation, 113 F.3d 677 (6th Cir. 1997); Dept. of Field Ops. Handbook Section 2202(c)(1) ("requiring exempt employees to keep track of and/or record their hours worked" does "not violate the salary basis test").  See e.g., Douglas v. Argo-Tech Corp., 113 F.3d 6771 (6th Cir. 1997); Renfro v. Indiana Michigan Power Co., 233 F. Supp. 2d 1174, 1182 (W.D. Mich. 2002); Schaefer v. Indiana Michigan Power Co., 197 F. Supp. 2d 935, 940-941 (W.D. Mich. 2002); Cooke v. General Dynamic Corp., 993 F. Supp. 50, 53-55 (D. Conn. 1997); W & H Op. Letter 2003-5.

Clearly, payment of overtime calculated on an hourly rate is not inconsistent with payment on a salary basis as Plaintiffs posit.  Overtime based on additional hours worked is a form of non-discretionary compensation contemplated by 29 CFR §541.601(b)(1). Zelenika, 2012 WL 3005375.  See Boykin v. Boeing Co., 128 F.3d 1279, 1281 (9th Cir. 1997) (quoting W&H Op. Letter 1738 (April 5, 1995)).  See also Aaron v. City of Wichita, Kansas, 545 3d 652, 658 (10th Cir. 1995).  In fact, courts have deemed payment based on total hours worked even less indicative of non-exempt employment when, as here, an employee receives his weekly salary *plus* additional compensation, calculated hourly.  "An employer does not violate the DOL's salary basis test by doing exactly what the salary basis test expressly authorizes." Bell v. Callaway Partners, 2010 WL 6231196 at *6 (N.D. Ga. 2010).  As here, when a company has voluntarily elected to provide premium pay to exempt personnel, employees must account for their regular as well as their overtime hours each week.  W&H Letter 2003-5.  In "shut-in" projects like Marathon, where employees work large numbers of hours in a short period of time, it would be impossible to pay them additional compensation *unless* Plaintiffs kept track of every hour worked.  (DSOF ¶ 59, 60) Because Plaintiffs were employed by Bay and leased to Shaw, Bay invoiced its client Shaw for the labor, and Shaw then invoiced its customer Marathon, with a mark-up at each step.  (DSOF ¶ 1, 2)

In addition, the hours worked by Plaintiffs were apportioned and budgeted to two (2) separate cost centers.  Any formula other than counting all hours would be cumbersome and problematic from a financial, budgeting, invoicing, and operational standpoint, and is custom the petrochemical industry.  ACS v. Detroit Edison, 444 F.3d 763, 770 (6th Cir. 2006) (FLSA does not circumscribe employer's authority to choose the mechanics of a compensation system that suits its business needs except if the system is designed to circumvent the salary basis test).

Here, Defendants tracked Plaintiffs' work by hour because it was necessary to pay Plaintiffs the additional, over-and-above-salary compensation and to meet business needs, not to circumvent the FLSA or avoid payment on a salary basis.  In Havey, the court upheld a similar salary scheme that guaranteed a predetermined amount in excess of the regulatory threshold as not designed to circumvent FLSA requirements.  Here, similar to Havey, not only were Plaintiffs assured a 40 hour per week minimum, they gratuitously were paid for all the hours worked over 40.  (DSOF ¶ 10-19)  As in Havey, Plaintiffs' compensation was not divided into guaranteed weekly minimum and the additional compensation for the purpose of circumventing the requirement of payment "on a salary basis."  § 541.118(b).  Rather, it was necessary to incentivize plaintiffs to work the long hours needed by intensive, short-term petrochemical construction projects, to provide them the overall salary levels Plaintiffs demanded as a condition of accepting the jobs (Ex. 9), and to simplify the three-tier invoicing process and multi-project budgeting process inherent in a complex construction project, where dozens of subcontracting companies provide and invoice for labor. (DSOF ¶ 1, 2, 6, 59, 60)

      **2.**    **Plaintiffs were guaranteed weekly compensation based on a minimum 40 hours.**

"Salary basis" is a legal term of art incorporating the concept of a guaranteed wage, but any pay formula which results in such minimum guarantee is sufficient.  A worker is paid on a salary-basis if he is guaranteed a certain number of hours that will produce a wage of that amount, exactly

as occurred here. There simply is no difference between being guaranteed a weekly wage or annual wage and being guaranteed a certain number of hours which will produce a minimum guaranteed wage. McReynolds, 192 F.2d 301 (any formula which results in a guarantee is sufficient). The form of the requisite guarantee is flexible. Courts have held that any formula that results in a guarantee of no less than $455 per week is sufficient, including a formula for guaranteed number of hours or shifts; e.g., McReynolds, at 303 (holding that foremen who were paid an hourly rate with a minimum guarantee of three shifts per week were salaried employees).

The basis for Plaintiffs denying there were salaried is because they were "expected to record the number of hours they actually worked each day" and because they were paid a "fluctuating" number of hours. Not surprisingly, Plaintiffs' Brief is absent any case law that requires salaried employees to record a minimum number of hours or prevents them from recording all hours worked. There is none. Instead, as occurred here, as long as the employment arrangement guarantees at least $455, recording actual hours worked or fluctuating payments do not negate an employee's salary-based status. As in Kennedy, Plaintiffs were paid *more* than their guaranteed amounts based on additional hours worked, which caused their earnings to fluctuate upward. The Kennedy Court rejected the argument that fluctuating earnings *computed* on an hourly basis are not salary-based. Because Plaintiffs regularly received their guaranteed minimum each pay period, their exempt status was not affected by the actual number of hours entered for a particular pay period or by how the time is described when entered into the payroll system; e.g., regular time, overtime, etc., or by whether they are paid for all hours worked. (DSOF ¶ 10-19, 25, 31, 37, 44, 49, 54) For the legitimate, practical business reasons discussed above, Plaintiffs' earnings had to be *computed* on an hourly basis, expressly permitted by § 541.604(b) and that pay formula did not jeopardize the exemption by violating the salary basis requirement.

Here, the employment arrangement with Plaintiffs, all hired into exempt positions (DSOF ¶ 10-55) , included a guarantee of the minimum weekly-required amount, albeit calculated with an hourly multiplier negotiated pre-hire, *plus* permissible additional compensation at a per-hour amount based on hours worked for work beyond the normal 40 hour workweek.  This mathematical calculation, specifically contemplated and permitted by §541.604(a), guaranteed a weekly wage far in excess of the statutory minimum regardless of the number of hours or days worked; in fact, it provided an annualized wage that far exceeded the minimum salary for Plaintiffs' position as requisitioned.[5]  (DSOF ¶ 6-9, 58)  Plaintiffs were paid that computed wage and thus were guaranteed weekly compensation ranging from $1,080 (40 x $27/hour) to $1,920 (40 x $48/hour) weekly. (DSOF ¶ 58) That Fuentes' hourly rate (and thus his guaranteed weekly salary) was raised from $43 per hour to $47.30 per hour is further evidence of an employment arrangement of at least 40 hours per week.  (DSOF ¶ 5, Ex. 9)  In fact, Plaintiffs usually worked at least 50 hours per week, earning more than their predetermined compensation (except for a very few weeks described below when Plaintiffs were absent for personal or other reasons).  (DSOF ¶ 56-58, 74-75)

Accordingly, because Plaintiffs did receive a "predetermined amount constituting all or part of [their] compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed," Plaintiffs were paid on a salary basis, and their Motion for Summary Judgment should be denied.

**C.**   **Only Deductions Which Caused Any Plaintiff's Earnings To Drop Below His Guaranteed Minimum Weekly Earnings Are Allegedly Improper**

Plaintiffs' meager "proof" they were not paid on a salary basis consists of a few instances where a small portion of a Plaintiff's wages was deducted in weeks where he recorded less than 8

---

[5]   The requisitions for all the positions held by Plaintiffs clearly described exempt positions. Site Superintendent 2 had a minimum salary of $51,516.  Construction Engineer 5 had a minimum salary of $59,148.  Construction Engineer 2 had a minimum salary of $38,796. EH&S Specialist 3 had a minimum salary of $44,520.  (DSOF ¶ 3, 6-9, 20-55)

hours in a day (i.e., "partial day deductions").  Plaintiffs misapply the law and mislead the Court by alleging they experienced a total of 34 partial day, and thus "improper," deductions (PSOF 61-66)  In fact, Plaintiffs' facts concede by the values stated that in all but 4 of the pay periods cited by Plaintiffs (PSOF 61-66) they earned *at least their weekly guaranteed minimum salary* and thus *no improper deductions were taken*.  (DSOF ¶ 62-72)  And, in 1 of those 4 periods alleged as improper, the salary-reducing deduction was *properly* made for full day absences for personal reasons, leaving Plaintiffs with only 3 pay periods in 18 months containing allegedly improper, partial day, exemption-jeopardizing deductions.  (DSOF ¶ 74, 90-95.  By significantly overstating the number and frequency of improper deductions, Plaintiffs ignores and misinterprets the law. Partial day deductions are NOT improper per the FLSA definition unless they reduce the guaranteed salary; i.e., drop pay <u>below</u> the predetermined amount if that amount constitutes part of compensation.  See §541.118(b); Minimum Guarantee plus Extras, § 541.602(a) reads, "An employee is not paid on a salary basis if deductions *from the employee's predetermined compensation* are made for absences occasioned by the employer or by the operating requirements of the business."  (emphasis added)  For an employee to lose the exemption, "a *reduction in salary* must actually have occurred."  <u>Kennedy</u>, 410 F.3d 365 at 370 (emphasis added).  Only deductions that cause the employee's compensation to drop below the guaranteed amount constitute *improper* deductions as defined by the FLSA.  <u>See also</u> <u>Havey</u>, 547 F.3d 158 at 164 ("[O]nce the fixed minimum portion of an employee's compensation has been determined, any reduction *below that set amount* would, in most circumstances, violate the 'salary-basis test.'"  (Emphasis added)) "[F]luctuations in [an employee's] paychecks are not per se evidence of hourly status.  It is the predetermined salary which determines [an employee's] status as hourly or salaried employee[ ]. <u>An employee's paycheck may fluctuate so long as the predetermined salary remains the same</u>." <u>ACS</u>, 2002 WL 33012183, *2; W&H Op. Letter 2006-24, 2006 WL 2792438 (prohibition against

improper deductions from guaranteed salary does not extend to any such additional compensation provided to exempt employees; additional compensation is something agreed to between employer and employee).  In Plaintiffs' circumstances, there are only a few isolated instances where the *predetermined minimum amounts* fluctuated.  In all other workweeks, all Plaintiffs received their guaranteed salary *or more*.  (Ex. 1)  Based on Plaintiffs' own facts, there was no reduction in salary; i.e., no paychecks less than Plaintiffs' guaranteed minimums (Attaway $1650, M. Fuentes $1920, S. Fuentes $1892, Rivera $1892, Marrero $1892 and Alonso $1080), except in a few isolated workweeks.  (PSOF ¶61-66; DSOF ¶ 77-83)

Except for 5 pay periods during the entire project when the project was closed for holidays, and 1 instance of partial day deduction, any wages short of the guaranteed minimum in those periods were due to full-day personal absences or a Plaintiff not working at all.  (DSOF ¶ 74) Those were not improper and do not jeopardize the salary basis.  § 541.602 (b)(1); § 541.118. Plaintiffs were not entitled to pay for full salary in the initial or terminal week of employment.  § 541.602(b)(6).  Deducting pay for personal time off or in the initial or terminal weeks may be calculated by using either the daily or hourly equivalent of the employee's full weekly salary or any other amount proportional to the time actually missed, as was done here.  § 541.602(c). Zelenika, 2012 WL 3005375 at *5 (portion of employees total compensation constituting base salary can be docked for missing full day of work, citing CFR § 541.602(b)(1)-(2)).

**D.** **Any Allegedly Improper Deductions Were Isolated, Inadvertent, Not Intended, Not Pursuant To Policy And/Or Reimbursed And Thus Do Not Jeopardize The Salary Basis**

As established above, except for a very few isolated instances in 6 pay periods,[6]

---

[6]    Allegedly improper deductions were taken in only 5 periods for Attaway, 4 periods for M. Fuentes, 3 periods for S. Fuentes, 2 periods for Marrero, 2 periods for Alonso and 1 period for Rivera,. DSOF ¶ 77-83) Digiore v Ryan, 987 F.Supp 1045, 1055 (N.D. Ill 1997) (One time deductions in salaried employee's pay does not affect exempt status) (citations omitted)

"deductions" were not "improper" as defined by the FSLA and case law interpreting that statute, indeed are not "deductions" at all <u>unless the minimum guaranteed amount is reduced</u>.  Regardless, for an employer to lose the benefits of the FLSA exemption even for improper deductions, the facts must demonstrate that the employer did not *intend* to pay employees on a salary basis.

§ 541.603(a).  Obviously, intention to do or not do something is a question of fact.

> **1.** **<u>Any partial day deductions were isolated, unintended, and not pursuant to any policy</u>.**

Plaintiffs have identified a "few random, isolated, and negligible deductions" not enough to show an actual practice or policy of jeopardizing the salary basis.  Any deductions that resulted in negligible underpayment to Plaintiffs of the guaranteed minimum in a handful of pay periods, even if improper, were merely happenstance, not a routine practice or policy.  Thus Defendants can rely on the margin of error tolerated by the regulation.  <u>Kennedy</u>, 410 F.3d at 372.  No Plaintiff lost more than the equivalent of a few hours of pay in more than a few pay periods.  (DSOF ¶ 77)  In all, there were alleged improper deductions to salary in only 6 out of a total of 305 pay periods for <u>all</u> Plaintiffs, and  a <u>total</u> of just over $5000 (ranging from $54 to $660 per Plaintiff) deducted from more than <u>$770,000</u> in total earnings by Plaintiffs, exclusive of per diem.  Those facts are the epitome of "random, isolated, and negligible" deductions which preserve the exemption.  Neither Defendant had an "actual practice" to make improper deductions nor did either have a clearly communicated policy permitting improper deductions.  (DSOF ¶ 61)  There was no pattern to the deductions, they occurred over only a small portion of Plaintiffs' employment at the Marathon project, and not one Plaintiff every complained that they were not paid their guaranteed amount.  (DSOF  78-83, 102-103)  Indeed, as to partial day deductions --the sole evidence and centerpiece of Plaintiffs' argument [7]-- only Attaway experienced a single dip in his regular salary for that

---

[7]    Significantly, Plaintiffs' facts and argument are silent as to improper *full day* deductions.  However, to fulfill its duty of candor to the Court and to insure Defendants reimburse any

reason.  (DSOF ¶ 73, 76, 68-72)  The remaining potentially deductions were the result of holiday closings. (DSOF ¶ 62-68)

Almost all of the factors the law instructs courts to consider as contributing to an "actual practice" of improper deductions are dispositively absent here, refuting, or at least, disputing, Plaintiffs' position  Defendants did not intend to pay on a salary basis.  Those factors include the number of *improper* deductions, the time period over which they were made, the number and geographic location of employees whose salary was *improperly* reduced, the number/location of managers responsible, and whether there was a policy permitting *improper* deductions. § 541.603(a).  Here, those factors weigh against any actual practice, and point instead to mistake or inadvertence by Bay.

Also militating against an "actual practice" is the relatively short time period – from a few weeks to 7 months – during which improper deductions were made.  (DSOF ¶ 96-101)  Where docking is infrequent, as it was here, it cannot be reasonably inferred to be the result of an underlying pattern or scheme.  The same is true where there is no policy permitting improper deductions.  Plaintiffs received as many as 78 paychecks each, more than 300 in all, but no Plaintiff experienced any allegedly improper deductions in more than 5 periods.  (DSOF ¶ 96-101)  Also,

---

and all arguably improper deductions, Shaw risks making for Plaintiffs the argument they missed.  Thus, Shaw's Statement of Facts and legal analysis identifies not only the partial day deductions cited by Plaintiffs, but other pay periods over the holidays when the Marathon Project was closed because the union labor force was unavailable, and when some but not all Plaintiffs earned less than their minimum salaries.  Deduction for time when work is not available are prohibited only "if the employee is ready, willing, and able to work" on those days.  § 541.118(a)(1).  Several Plaintiffs left Illinois the day *before* the plant closed for holidays, so they were not "ready, willing, and able to work." In those cases, pay for holidays arguably properly was deducted.  And, if Plaintiffs were unavailable and unwilling to work because they *elected* to spend holidays with their families, even if the Project had needed them, these holiday deductions would be proper.  Obviously, Plaintiffs' readiness, willingness, and ability to work is a fact-sensitive issue and cannot be determined on this record, but only revealed at trial. However, for the purposes of this Response only, holiday deductions do not diminish Defendants' arguments that they were isolated, inadvertent, and unintended.

the dollar amount of deductions from guaranteed salaries was negligible.  Deductions ranged from

$54 to $660, "chump change" for workers collecting as much as $165,000 a year, plus up to

$54,000 per diem.  (DSOF ¶ 84-95)  Without an "actual practice" exempt status is preserved.

Identifying "a few random, isolated, and negligible deductions are not enough to show an actual

practice or policy of treating as hourly the theoretically salaried."  Mathews, 772 F. Supp. 2d, 4010

F.3d 365.  See also Cash v. Cycle Craft Co. Inc., 508 F.3d 680, 684 (1st Cir. 2007) (finding that

"two aberrant paychecks out of the approximate 50 that [plaintiff] received do not amount to an

"actual practice").  Accordingly, Plaintiffs have insufficient evidence Defendants had any intention

not to pay on a salary basis, or had any practice of policy to make improper deductions.  Summary

judgment must be denied as to Plaintiffs' salaried status.

## 2. Even if there were isolated, unintended deductions Plaintiffs will be reimbursed and made whole, preserving the exemption.

To the extent there were impermissible deductions, they were certainly small in number,

isolated, and inadvertent pursuant to the standard outlined in §541-603(a)-(c).  The isolated

deductions from Plaintiffs' weekly guarantee  are insufficient to jeopardize their exempt status.

Other than permissible full day deductions for personal absence, or partial pay for initial weeks of

employment, in only 6 pay periods(5 for Attaway, 3 for M. Fuentes, 3 for S. Fuentes, 1 for Rivera,

2 for Marrero, and 2 for Alonso) did any Plaintiff ever earn less than his predetermined amount for

what arguably were improper deductions. (DSOF ¶ 78-83, 96-101)

The preamble to section § 541.603(c) describes inadvertent deductions as those taken

unintentionally such as result of a clerical or time-keeping error.  Jones v. Northwest

Telemarketing, Inc., 2000 WL 568352 (D. Or. 2000); Reeves v. Alliant Techsystems, Inc., 77 F.

Supp. 2d 242 (D.R.I. 1999); Furlong v. Johnson Controls World Services, Inc., 97 F. Supp. 2d

1312, 1317 (S.D. Fla. 2000)(partial day deductions due to employer's mistaken belief are

considered inadvertent).  The same 6 factors in subsection § 541.603(a) described above to

16

determine whether an employer has an "actual practice" of making improper deductions also are applied to whether deductions are isolated or inadvertent.  Applying those factors here—deductions for 4 holidays and a single partial day, the total value of deductions constituting less than 1% of total earnings, only 6 contract employees leased to Shaw impacted, occurring in only 6 pay periods over less than half a year, with no policy permitting them, no complaints by Plaintiffs and, despite Shaw's worldwide presence, all at a single project in Robinson, Illinois—the only reasonable inference is that the deductions were isolated and inadvertent.  And, of course, there are issues of fact regarding all those factors.

Pursuant to §541.118(a)(6), if a deduction is "inadvertent," the exemption is not lost if the employer reimburses the employee for the deductions and promises to comply in the future.  This window of correction to cure inadvertent or isolated violations of salary basis regulations is available where an employer, like Bay, demonstrates "objective intention" to pay employee on salaried basis.  Such "objective intention" is established by the evidence here or, at least, the evidence shows reasonable minds could come to different conclusions on that issue.  Defendants intend to take advantage of that window.  See Digiore at 1055 (citing Arrington v City of Macon, 973 F.Supp 1467, 1474 (M.D. Ga. 1997) (employer may preserve exempt status even after suit filed).  In Auer, the court allowed the employer to take advantage of the window of correction even though it had made no effort to do so by the time the U.S. Supreme Court considered the case.  Auer v Robbins, 519 U.S. 452 (1997). See also, Lee v Flight Safety Serv. Corp, 20 F.3d 428 (11th Cir 1994) (even intentional impermissible deductions do not defeat right to utilize window of correct, regulations do not limit period the window is available)

Accordingly, Defendants can preserve the exemption, despite a few isolated workweeks where Plaintiffs received less than their guaranteed minimum weekly salaries, by tendering to Plaintiffs the full amount, plus 8% interest, of any amounts below their guaranteed earnings that

17

were allegedly, improperly deducted during the period of their employment by Bay.  Moore v.

Hannon Foods, 317 F.3d 489, 492 (5th Cir.) cert denied, 540 U.S. 938 (2003) (employer "tendered

plaintiffs the total amount of all improper deductions plus 8% interest from the dates of the

deductions to . . . the date then set for trial").  For all Plaintiffs this amounts to no more than

$5308.15, exclusive of interest.  (DSOF ¶ 84-95)  A check in that amount is being forwarded to

Plaintiffs' counsel and a copy will be filed with the Court as proof of that reimbursement to

preserve the exemption.

### E.   Plaintiffs' Claim Of Entitlement To More Than $122,000, Or Any Amount, Of Liquidated Damages Is Premature And Non-Meritorious

As discussed above, there are numerous genuine disputes of fact whether Plaintiffs were

paid on a salary basis and, therefore, are exempt and not entitled to overtime, let alone liquidated

damages.  The facts soundly refute Plaintiffs' position that there was any failure to pay overtime,

because Plaintiffs were paid on a salary basis and thus not entitled to overtime.  Thus, it is

premature for Shaw to establish good faith and reasonable grounds for believing that any act or

omission did not violate the FLSA given that it has not been established (and cannot be established

on summary judgment) that Plaintiffs are non-exempt employees.  Indeed, it cannot reasonably be

inferred that Defendants believed not paying premium overtime violated the FLSA given record

evidence that Plaintiffs earned more than $100,000 a year, met one of the duties tests, and thus are

exempt on that basis alone as highly compensated employees.  Obviously, if failure to pay

overtime was established at trial, Defendants could and would tender evidence of good faith and

reasonable grounds, include several categories other than advice of attorney, any of which could

disqualify Plaintiffs from receiving liquidated damages.  For example, Bay and Shaw relied on and

acted in good faith and in conformance with FLSA Opinion Letter 2003-5.  (Ex. 8)  29 U.S.C § 259

excuses an employer who proves that "the act or omission complained of was in good faith in

conformity with and in reliance on any written administrative regulation, order, ruling, approval, or

interpretation of "the Administrator of the Wage and Hour Division (the "good faith reliance defense"). See Herman v. Palo Group Foster Home, Inc., 183 F.3d 468, 474 (6th Cir. 1999) (citing USC § 260); Atlanta Prof. Firefighters Union v. Atlanta, 920 F.2d 800, 807 (11th Cir. 1991) (reliance on decision of Wage and Hour Division in addition to evaluation of job duties satisfied "good faith" defense); Ball v. District of Columbia, 795 F.Supp. 461, 468 (D DC 1992) ("good faith" defense satisfied where employer used "reasoned functional analysis" for arriving at position); Adams v. United States, 350 F.3d 1216, 1226 (5th Cir. 2003) (denying liquidated damages where parent company personnel specialist "described core elements of exemption standard in a logical approach for applying the standard"); Berry v. Sonoma County, 791 F.Supp. 1395, 1417 (N.D. Cal. 1992) (no liquidated damages where personnel staff attended seminars, reviewed statutes and court decisions as well as wage and hour rulings). Fazekas v. Cleveland Clinic Foundation, 204 F.3d 673, 679, n3 (6th Cir. 2000). See Hultgren v. County of Lancaster, 913 F.2d 498, 507 (8th Cir. 1990); Frank v. McQuigg, 950 F.3d 590, 598 (9th Cir. 1991). Accordingly, any summary conclusion that liquidated damages are warranted, let alone in any particular amount, is premature and involves questions of fact inappropriate for summary judgment.

F.   **Shaw And Bay Are Not Joint Employers To The Extent Shaw Had No Control Over Any Deductions From Plaintiffs' Guaranteed Minimum Weekly Earnings**

Plaintiffs devoted a large portion of their brief to a discussion of Shaw's control over Plaintiffs duties and responsibilities; however, the "duties test" is never addressed in and not relevant to Plaintiffs' Motion.  However, to determine whether Shaw should be held liable for any alleged failure by Bay to pay on a salary basis, which is Plaintiff's only argument at present, Shaw had no ability to control such deduction.  Once Plaintiffs reported their total hours worked to Bay, Shaw was without knowledge let alone control, whether Bay paid Plaintiffs for holidays deducted for partial days, or paid full weekly minimum salary in every week.  (DSOF ¶ 104-106)  Shaw's

next and only contact regarding pay to Plaintiffs was by its corporate accounting department, which received and processed Bay's invoices to Shaw among those from thousands of other vendors. Shaw's Accounts Payable department merely received each invoice, checked to be sure the total number of hours Bay was demanding payment for at the billing rate matched the total number of hours reported. There was no opportunity to examine individual days, and indeed, the only amounts that were invoiced to Shaw were *weekly* totals not the number of days or the number of hours per day worked. Accordingly, Shaw was not privy to whether Plaintiffs were paying Plaintiffs for the few holidays that may have reduced their guaranteed pay and had no control over any deductions.

## IV.   CONCLUSION

For the above reasons, Plaintiffs are not entitled to a judgment as a matter of law on the salary-basis issue. Viewing the record in the light most favorable to Shaw, the evidence establishes Plaintiffs were *per se* exempt as highly compensated exempt employees. The analysis should end there. Even if it does not, the evidence at least disputes Plaintiffs' contention that they were not paid on a salary basis. As described above, there are many genuine disputes of material facts concerning Defendants' employment arrangements with Plaintiffs -- whether Defendants guaranteed a weekly minimum salary based on and computed by a minimum guaranteed number of hours, whether and when improper deductions were taken, how many, for what purpose, over what time period, by which managers, whether Defendants intended to pay Plaintiffs on a salary basis, whether any deductions were isolated, few in number, negligible in amount, or geographically concentrated, whether Defendants had an actual practice or policy of improper deductions, and whether Plaintiffs have been reimbursed for all improper deductions. With that plethora of issues in dispute, summary judgment must be denied.

Respectfully submitted,

Ogletree Deakins Nash Smoak & Stewart, P.C.


By:____s/ Jan Michelsen_____
      Jan Michelsen, IN Bar No. 18078-49
      111 Monument Circle, Suite 4600
      Indianapolis, Indiana  46204
      Telephone:  317.916.1300
      Facsimile:  317.916.9076
      *jan.michelsen@ogletreedeakins.com*

Attorneys for Defendant
Shaw Energy & Chemicals, Inc.


## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing *Shaw's Response in Opposition to Plaintiffs' Motion for Summary Judgment* has been filed electronically, this 3rd day of September, 2013.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.


Douglas M. Werman             Robert Doyle Wilson
Werman Law Office, P.C.       Law Offices of Robert D. Wilson, PC
77 West Washington             18111 Preston Road
Suite 1402                      Suite 150
Chicago, Illinois  60602        Dallas, Texas  75252
dwerman@flsalaw.com        rwilson@wilsonlawtexas.com


      s/ Jan Michelsen_____
      Jan Michelsen


15710480.1