IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JUSTIN ATTAWAY, SAM FUENTES MARTIN FUENTES, WILLIAM RIVERA, TEDDY MARRERO, and VICTOR E. ALONSO AGUIRRE,<br><br>Plaintiffs,<br><br>v.<br><br>BAY INDUSTRIAL SAFETY SERVICES, INC., SHAW ENERGY & CHEMICALS, INC., JENNIE RICH, and WILLIAM GLENN PARKER,<br><br>Defendants. | Case No. 3:11-cv-00803 |

**PLAINTIFFS' OPPOSITION TO DEFENDANT SHAW'S MOTION
TO CONTINUE TRIAL AND STAY PRETRIAL PROCEEDINGS**

**I.      INTRODUCTION**

Liability against Defendant Bay Industrial Safety Services, Inc.'s ("Bay") was always a *fait accompli*. Bay has repeatedly admitted, including a judicial admission in its Answer (ECF No. ECF No. 103, ¶¶ 42, 51), that Plaintiffs were paid on an "hourly basis," entitling them to overtime pay. So, it was logical that Bay would want to avoid the unnecessary expense and inconvenience of trial by confessing to judgment. Shaw Energy & Chemicals, Inc.'s ("Shaw") decision to take a different approach does not warrant vacating the April 7, 2014, trial date. There is no true, good faith reason why Defendant cannot be ready for trial, other than to inject further delay and expense into what otherwise is a straightforward Fair Labor Standards Act and Illinois Minimum Wage Law case for owed overtime pay.

Contrary to Shaw's vague and over-the-top motion to continue, Defendant Bay's proposed Confession of Judgment, and the dismissal of the individual Defendants, neither impacts Shaw's defenses at trial, nor represents some last-minute change in the record evidence

that warrants or requires additional written and oral discovery. If anything, Bay's Confession of Judgment (on liability only, leaving Bay as a party at trial) and the dismissal of Jennie Rich and William Glenn Parker, only, simplifies and shortens the trial. The "sky is falling" tone of Shaw's motion is more a reflection of the merits of its defenses and its likelihood of success at trial, as opposed to setting forth any real or legitimate basis to continue the trial date.

Moreover, continuing the trial date would greatly prejudice four of the five remaining Plaintiffs, who have scheduled time to be absent from work and travel great distances, including from overseas, to be in East St. Louis for the April 7, 2014, trial. Shaw's motion should be denied.

## II. ARGUMENT

Shaw suggests that Plaintiffs will argue that because of Bay's Confession of Judgment on liability, the only issues remaining for trial are Shaw's status as Bay's "joint employer" and damages. That is not true. Plaintiffs do not intend to use Bay's Confession of Judgment as offensive collateral estoppel or any other kind of bar to prohibit Shaw from arguing that Plaintiffs are exempt from the FLSA and IMWL. Shaw remains free – consistent with ethical obligations – to make any argument that is supported by the evidence in the case.

What is that evidence? It is the same evidence, even after Bay's Confession of Judgment and supporting factual stipulations, that existed six months ago, and when Plaintiffs' filed their original Complaint, over two years ago. There is, therefore, no merit to Shaw's repeated argument that the trial must be continued because Rich and Parker have "switched sides as part of some agreement between Plaintiffs and Bay and thus now are witnesses hostile/adverse to Shaw at trial." The evidence in this case is the same, and Shaw is on the same trial footing today as before the Confession of Judgment.

2

### A. Bay's Confession of Judgment Is Not A Reason To Continue The Trial

Shaw's suggestion that a full stop to the trial must occur because the factual stipulations supporting the Confession of Judgment contradict Jennie Rich's August 29, 2013 affidavit, which was created by Shaw's own counsel to avoid summary judgment, might amount to "potential perjury," has no merit. *First*, all of Bay's factual stipulations are supported by the evidentiary record, much from the testimony of Shaw's own Rule 30(b)(6) witness, Christine Barker, and Bay's Rule 30(b)(6) witness, Jennie Rich. *Second*, if Shaw truly believes an inconsistency exists between Rich's original deposition testimony, her subsequent affidavit (created by Shaw's lawyer), and the factual stipulations in Bay's Confession of Judgment, those are issues for potential impeachment at trial and argument to the jury, not a reason to stop the trial and reopen discovery.

#### 1. The Confession of Judgment is Consistent with the Record Evidence

Identified below are certain stipulations in Bay's Confession of Judgment with supporting evidentiary citations.[1]

| Stipulation | Location in Evidentiary Record |
| --- | --- |
| ¶16. Pursuant to Defendants' Master Employment Services and Staffing Agreements, Shaw had the contractual right to unilaterally terminate Plaintiffs' employment at the Marathon Refinery. | "Q. And even after the plaintiffs started working for Shaw at the Marathon facility, Shaw had the ability to terminate them, correct? A. Correct. Q. And if they had been terminated by Shaw – A. Uh-huh. Q. – what would that have done to their employment by Bay? A. They would have been terminated, as well. Q. "… Shaw had the contractual right, correct – A. Yes. Q. – to terminate any of the plaintiffs? A. Yes. Q. And they could do that unilaterally, correct? A. Yes." Bay Rule 30(b)(6) Dep. (Rich), at 73:25-74:22; see also SHAW000009, ¶12 (Master Employee Services and Staffing Agreement between |

---

[1] In the majority of instances, the factual stipulations find support in multiple places in the evidentiary record. The citations, therefore, identify some, but not every location where the evidence exists in the record. In an effort to not turn this response into a motion for summary judgment, Plaintiffs have not attached the underlying supporting evidentiary materials. Plaintiffs will do so if requested by the Court. Otherwise, the information can be found at ECF Nos. 89 and attachments. (Plaintiffs' Statement of Undisputed Facts in Support of their Motion for Summary Judgment on their Counts I and II claims arising under the Fair Labor Standards Act and Illinois Minimum Wage Law).

3

| | |
|---|---|
| | Shaw and Bay). |
| ¶17. Plaintiffs' termination from the Marathon Refinery by Defendant Shaw would have also resulted in Plaintiffs' employment with Bay being terminated. | *Id.* |
| ¶18. Shaw managers and employees supervised Plaintiffs' work at the Marathon Refinery. Bay did not supervise Plaintiffs' work at the Marathon Refinery. | ECF No. 103, Bay, Rich and Parker's Amended Answer and Affirmative Defenses to Plaintiffs' Third Amended Complaint, ¶ 36.<br><br>"Q. Did Bay have any on-site supervisors who supervised the plaintiffs' employment? A. No. Q. Other than Mr. Parker, who I'll talk to later, did Bay have any supervisors monitoring, directing the work of the plaintiffs? A. No." Bay Rule 30(b)(6) Dep. (Rich), at 75:6-12. |
| ¶19. Shaw exercised control over the day to day terms of Plaintiffs' employment. For example, Defendant Shaw, and not Defendant Bay, set Plaintiffs' work schedules and determined when Plaintiffs were required to report to work at the Marathon Refinery and when they could stop working for the day. | "Q. And it was Shaw that decided when the plaintiffs would begin working, correct? A. Yes. Q. It was Shaw that decided when the plaintiffs would stop working, correct? A. Yes." Shaw 30(b)(6) Dep. (Barker), at 78:21-79:1.<br><br>"Q. Was Bay involved in any way in determining the number of hours that plaintiffs worked each week? A. No." Bay 30(b)(6) Dep. (Rich), at 75:13-5.<br><br>"Q. Did – did Bay have any involvement in any way in determining what the plaintiffs' day-to-day job duties and responsibilities were? A. No. Q. Who did? A. The people at the site. Q. Did Bay have any day-to-day responsibility in scheduling the plaintiffs to work? A. No. Q. Who did? A. The site. Q. And 'the site,' is that – is that Shaw? A. Yes." Shaw 30(b)(6) Dep. (Speicher), at 34:3-15. |
| ¶21. Defendant Shaw, and not Defendant Bay, determined that Plaintiffs would be paid their straight-time regular hourly rate of pay for all time worked, including the hours Plaintiffs worked in excess of forty (40) hours in individual work weeks. | "Q. What's the 'base rate'? What does that mean? A. That is what the employee receives from Bay." Bay 30(b)(6) Dep. (Rich), at 58:12-13.<br>"Q. And with regards to all of the base rates for all of the employees, could Bay unilaterally, on its own, change that rate without first having Shaw's agreement? A. No. Q. And that's the rate that the employees were paid for each hour they worked, correct? A. Correct." Bay 30(b)(6) Dep. (Rich), at 62:15-22.<br><br>Q. "And it's Shaw's position that the amount of money that was paid to the plaintiffs for the |

4

| | |
|---|---|
| | compensation that was up to Bay, correct? A. Yes. Q. Shaw didn't have any involvement in that, correct? A. Not what was paid, correct. Q. Okay. Other than the fact that it asked Bay to agree to the base rates in the offer sheets, correct? A. Yes. Q. And it was Shaw's expectation that they would be paid that hourly rate for each hour they worked, correct? A. Yes." Shaw 30(b)(6) Dep. (Barker), at 140: 15-141:3. "Q. Was it Shaw that made the determination that this job position would be exempt? A. Yes." Shaw 30(b)(6) Dep. (Barker), at 28: 22-24. |
| ¶22. Defendant Shaw, and not Defendant Bay, set the regular base hourly rate of pay for each Plaintiff. The base regular rates were the hourly rates of pay that Bay paid Plaintiffs for each hour they worked for Shaw at the Marathon Refinery. | *Id.* |
| ¶23. Defendant Bay could not modify Plaintiffs' regular rates of pay without first getting Shaw's approval. | "Q. And with regards to all of the base rates for all of the employees, could Bay unilaterally, on its own, change that rate without first having Shaw's agreement? A. No." Bay 30(b)(6) Dep. (Rich), at 62:15-19. |
| ¶24. Defendant Shaw provided Plaintiffs with a safety handbook and orientation materials. | "Q. Do you know whether or not the plaintiffs were provided any kind of orientation materials by Shaw? A. They were given, as she explained, a safety handbook. The book also contained work rules concerning things you could or couldn't do. They were given safety orientation before they were hired. They were given an orientation by – since they were the engineers, they had gone through the drawing system, the document control system, the specifications, the materials that they would need to use, not in terms of understanding or reading every bit of it, but at least knowing where you could locate the material you needed to do your job." Shaw 30(b)(6) Dep. (Speicher), at 36:18-37:6. |
| ¶25. Shaw, and not Defendant Bay, gave Plaintiffs their work tools, including tape measures, hard hats, safety glasses, fire protective clothing, steel-toed work boots, papers, pencils, calculators and computers to perform their work for Shaw. | "Q. Do you know whether or not Shaw provided the plaintiffs any work tools? A. Yes. Q. What were they given or provided? A. I'm sure they were provided tape measures, hard hats, safety glasses, fire-protective clothing, boots. I think we bought most of them steel-toed work boots. Papers, pencils, calculator, computer. Q. That was all provided by Shaw to the plaintiffs? A. Yes. Q. Did the plaintiffs |

5

| | |
|---|---|
| | have to pay for any of that? A. No." Shaw 30(b)(6) Dep. (Speicher), at 37:21-38:9. |
| ¶26. Shaw, and not Defendant Bay, dictated Plaintiffs' job duties and responsibilities and determined which tasks they performed on a daily basis for Shaw at the Marathon Refinery. | "Q. Was – was Bay involved in any way in determining the plaintiffs' job duties and responsibilities for their work for Shaw? A. No. Q. And Bay didn't have any responsibility for determining what the plaintiffs did on a day-to-day basis at Shaw, correct? A. No. Q. Or for Shaw, correct? A. No." Bay 30(b)(6) Dep. (Rich), at 64:20-65:4.<br><br>"Q. To your knowledge, did Bay have the power or the authority to dictate in any way what the plaintiffs' job duties and responsibilities would be at Shaw's work site? A. No." Shaw 30(b)(6) Dep. (Speicher), at 34:16-20. |
| ¶27. Defendant Bay did not have the authority to dictate or alter Plaintiffs' job duties and responsibilities for Shaw at the Marathon Refinery. | *Id.* |
| ¶28. Defendant Shaw maintained employment records on behalf of Plaintiffs, including time records, known as Shaw Time, which tracked the number of hours Plaintiffs worked each day at the Marathon Refinery. Defendant Bay did not keep its own time records, but instead relied on Shaw's time records for payroll purposes. | "Q. Based on the Shaw time records, Shaw can determine how much plaintiffs worked each week, correct? A. Yes. Q. And to the best of your knowledge, those records are accurate, correct? A. Yes. Q. So why don't we – if you can just walk me through the process. The plaintiffs would record their time in the Shaw time for the week. Then it would be reviewed by the – a Shaw manager or his or her delegate, correct? A. Yes. Q. And then what would happen next? A. The time sheets were printed and transmitted to Bay." Shaw 30(b)(6) Dep. (Barker), at 96:12-97:1.<br><br>"Q. Other than the Shaw records that tracked the number of hours that plaintiffs worked each week – A. Uh-huh. Q. – did Bay have any of its own records identifying the number of hours that plaintiffs would work each week? A. No. That's what I went by." Bay 30(b)(6) Dep. (Rich), at 86:13-19. |
| ¶29. Defendant Bay employed Plaintiffs to work regularly and exclusively for Defendant Shaw at the Marathon Refinery. | ECF No. 103, Bay, Rich and Parker's Amended Answer and Affirmative Defenses to Plaintiffs' Third Amended Complaint, ¶ 33. |
| ¶30. Plaintiffs worked more than forty (40) hours during one or more individual workweeks for Shaw and Bay at the Marathon Refinery. | ECF No. 70, 70-1, Bay Stipulation.<br><br>ECF No. 103, Bay, Rich and Parker's Amended Answer and Affirmative Defenses to Plaintiffs' |

| | |
|---|---|
| | Third Amended Complaint, ¶¶ 41, 50. |
| ¶31. Plaintiffs were paid on an "hourly basis" for all time they worked for Bay and Shaw at the Marathon Refinery. | ECF No. 103, Bay, Rich and Parker's Amended Answer and Affirmative Defenses to Plaintiffs' Third Amended Complaint, ¶¶ 42, 51. |
| ¶32. Plaintiffs were paid their regular, straight time hourly rates of pay for all time they worked, including the time they worked more or less than eight (8) hours in a day or more or less than forty (40) hours in a work week. | ECF No. 70, 70-1, Bay Stipulation.<br><br>ECF No. 103, Bay, Rich and Parker's Amended Answer and Affirmative Defenses to Plaintiffs' Third Amended Complaint, ¶¶ 43, 52. |
| ¶33. Plaintiffs were only paid for the hours they worked. Plaintiffs were not guaranteed any minimum amount of pay in each week that they worked. | ECF No. 70, 70-1, Bay Stipulation.<br><br>"Q. And it was Shaw's expectation that they would be paid that hourly rate for each hour they worked, correct? A. Yes. Q. Shaw is not aware, is it, of any promise that was made to the plaintiffs to pay them a guaranteed amount each week? A. No." Shaw 30(b)(6) Dep. (Barker), at 140:25-141:7.<br><br>"Q. Plaintiffs weren't guaranteed any certain amount of money each week they worked? A. No." Bay 30(b)(6) Dep. (Rich), at 88:1-3.<br><br>"Q. Well, in a week where one of the plaintiffs only recorded, for example, ten hours in the Shaw Time – A. Uh-huh. Q. – time keeping system, they would have been paid ten hours multiplied by the base rate, correct? A. Correct. Q. And in a week where they worked 70 hours, 7-0, they would have been paid 70 hours multiplied by the base rate, correct? A. Correct. Q. So in a week where there was only ten hours worth of work, they may have only been paid for ten hours worth of work, correct? A. Correct. Q. And that's the case with all the plaintiffs, correct? A. Correct. Bay 30(b)(6) Dep. (Rich), at 77:3-20. |
| ¶34. Bay did not take any steps to ensure Plaintiffs were paid at least eight (8) hours for any day that they worked. | Various deposition testimony, including:<br>"Q. Did Bay or you instruct any of the plaintiffs to record a minimum number of hours each week? A. No. Q. Or each day? A. No. Q. How about a maximum number of hours each day? A. No. Q. Or each week? A. No." Bay 30(b)(6) Dep. (Rich), at 82:16-24.<br>"Q. Plaintiffs weren't guaranteed any certain amount of money each week they worked? A. No." Bay 30(b)(6) Dep. (Rich), at 88:1-3. Also, absence of any |

7

| | |
|---|---|
| | documents identifying any policy regarding same. |
| ¶35. Bay did not take any steps to ensure Plaintiffs were paid at least forty (40) hours in a week. | *Id.* |
| ¶36. Bay never communicated to Plaintiffs that they could complain if they were paid for fewer than eight (8) hours in a day, nor did Bay inform Plaintiffs they could complain if they were paid for fewer than forty (40) hours in a week. | *Id.* |
| ¶ 36. Plaintiffs were not paid overtime at the rate of one and one half times their regular rate of pay for all time they worked in excess of forty (40) hours in individual work weeks. | ECF No. 70, 70-1, Bay Stipulation. |

As the foregoing shows, the factual basis for each stipulation in the Confession of Judgment can be found in the evidentiary record. Shaw's claims to prejudice or surprise about Bay's stipulated facts is disingenuous. Nor is Shaw in a position to object to Bay's stipulations. *Bank of Illinois v. Allied Signal Safety Restraint Systems,* 75 F.3d 1162, 1168 (7th Cir. 1996) (rejecting a party's use of "sham" affidavits that contradict prior deposition testimony.")

### 2. Like Plaintiffs, Shaw is Free to Use All Available Evidence to Impeach Bay or Any Other Witness at Trial

Shaw believes that the "Confession of Judgment states that Rich will testify at trial, presumably to contradict her previous affidavit submitted in summary judgment." Again, not true. Putting aside the irony – since Ms. Rich's prior affidavit was written by Shaw's lawyer in an effort to create factual issues in opposition to Plaintiffs' motion for summary judgment – Shaw's assumption about why Ms. Rich will be at the trial and why she *may* provide testimony misses the point.[2]

---

[2] Ms. Rich's August 29, 2013 affidavit is hearsay and is not admissible at trial (except for possible impeachment purposes). F.R.E. 802.

8

Shaw will suffer no prejudice because Ms. Rich will *be* present, not absent, at the trial. Thus, to the extent that Shaw believes that the Confession of Judgment creates issues of fact with other sworn admissible testimony, Shaw is free, at trial, consistent with the applicable Rules, to try to impeach Ms. Rich or any other witness.

Further, to the extent that Shaw believes the Confession of Judgment requires new or different motions in limine – Shaw's motion doesn't explain why – Plaintiffs have no objection. The trial is still nearly five weeks away and there is still ample time to file any additional motions, or, as is the normal course, to make evidentiary objections at trial.

**B.    New, Additional Discovery from Plaintiffs and Bay is Not Warranted**

Shaw also argues that the trial must be postponed because it is entitled to discovery regarding the "communication between Bay's counsel and Plaintiffs' counsel" concerning the confession of judgment, "'Mary Carter arrangements, payment of funds, and any other aspect of this negotiation." Shaw claims that "[s]uch evidence clearly is admissible pursuant to F.R.E. 408(b)" because such evidence is allowed "where needed to 'prove a witness' bias or prejudice.'"

This argument is wrong because there was no Rule 408 "settlement" between Bay and Plaintiffs. Nor was there any "payment of funds" or future promise to pay money by Defendants Rich or Parker to Plaintiffs. Defendants Rich and Parker will be dismissed. With regard to Bay, the Confession of Judgment expressly states that Bay remains a party Defendant, subject to the determination of damages at trial.[3]

---

[3] Shaw's reference to a "Mary Carter" agreement is misplaced. The nickname of those agreements derives from the case of *Booth v. Mary Carter Paint Co*., 202 So. 238 (Fla. App. 1967). A Mary Carter agreement generally has following characteristics: (1) it limits the liability of the settling defendant, who remains a party to a pending action; (2) it is kept secret from the nonsettling parties and/or judge and jury; and (3) it guarantees to the plaintiff a minimum recovery, notwithstanding the fact that the plaintiff may not collect on the judgment against the

9

### C. Nor is Any Failure by Bay to Answer Shaw's Discovery to its Satisfaction A Basis to Continue the Trial

The discovery that Shaw claims Bay failed to answer – which relate to Bay's, Rich's and Parker's financial condition and ownership interests in other companies – are directed to Shaw's cross claim against Bay, *not* Plaintiffs' FLSA and IMWL claims set for trial on April 7, 2014. Shaw already has a judgment against Bay on that cross-claim, and the information it seeks as part of its recently filed motion for sanctions is not relevant to *Plaintiffs' claims* to be tried on April 7, 2014.

Instead, the requested discovery is more akin to the information a party obtains in a post-judgment citation proceeding. This kind of information would not be admissible under any circumstance at trial and Shaw itself filed a motion in limine (ECF No. 162) seeking to bar the admission of any evidence at trial relating to financial status. Plaintiffs have filed a similar motion seeking to bar any evidence into the current financial standing of Defendants Bay, Rich, and Parker. ECF. No 176. It is therefore puzzling that Shaw would rely on such information as an attempt to delay trial.

Even if the discovery answers relating to Bay's, Rich's and Parker's finances were relevant and admissible at trial, it was Shaw itself that elected to wait almost *one year*, until February 18, 2014, to move to compel discovery answers that were served in March, 2013. Thus, Shaw's claim that its own delinquency in moving to compel the information now warrants continuing the trial date should be rejected.

---

settling defendant or that the verdict may be less than that specified in the agreement. The classic Mary Carter agreement would add a fourth characteristic: that the settling defendant's liability is decreased in direct proportion to the increase in the nonsettling defendants' liability. See, e.g., *Cox v. Kelsey-Hayes Co.*, 594 P.2d 354 (Okl. 1978). None of these elements exist here.

Nor is there any merit to Shaw's belief that if Bay had provided more complete answers to its discovery requests, those answers would somehow show that "Bay clearly has 'switched sides' to attempt to avoid any financial liability to Plaintiffs or to Shaw." None of the discovery requests are remotely aimed at discovering information to support such a proposition. And, again, by its express terms, Bay has done the opposite through the confession of judgment: it admitted liability on Plaintiffs' FLSA and IMWL claims and remains in the case as a party for damages purposes. Bay has not avoided financial liability, and there will be no empty chair at trial.

### D. The Pre-Trial Documents Will Be Timely Completed

Shaw also claims that the Confession of Judgment impacts the preparation of the pre-trial documents. This is also not true. Each party is free to make its own stipulations. See e.g., ECF Nos. 70 and 70-1, 74 and 74-1 (prior stipulations made by Bay and Shaw). Bay's Confession of Judgment and stipulated facts does not impact Shaw's ability to put on its own defense at trial, and does not (and should not) change Shaw's trial witnesses, exhibits, or jury instructions.

Plaintiffs are committed to the timely completion of the pre-trial documents. On February 28, 2014, Plaintiffs provided Defendants Shaw, Bay, Parker and Rich a draft proposed pre-trial order, Plaintiffs' exhibit list, witness list, and damages and asked for Defendants to make comments and proposed changes. Plaintiffs intend to provide Defendants proposed jury instructions on March 4, 2014. If Defendants, or Shaw, require a slight amount of additional time to cooperate with Plaintiffs to complete a Joint Pre-Trial Order, Plaintiffs' have no objection. But Plaintiffs *do* expect Defendants to cooperate in the preparation of all pre-trial documents.

### E. Plaintiffs Will Be Prejudiced If The Trial Is Continued

Finally, four of the five Plaintiffs, Sam Fuentes, Martin Fuentes, Teddy Marrero, and William Rivera, have arranged to be absent from work and to attend the trial on April 7, 2014.

Sam Fuentes is currently working in Kansas, Martin Fuentes is working in Louisiana, Teddy Marrero in California, and William Rivera in Colombia, South America.[4] Each has arranged for time off work to appear and provide testimony in support of their claims. It will be difficult for them to arrange to all be absent from work and attend the trial at the same time later in 2014. Plaintiffs' counsel have also cleared their schedule to begin the trial on April 7, 2014, including cancelling a spring vacation trip with family.

Simply put, after years of litigation, tens of thousands of dollars in costs and many hundreds of thousands of dollars in attorneys' fees, Plaintiffs are entitled to their trial. In light of Plaintiffs' availability, to continue the trial would be an undue hardship.

### III. CONCLUSION

For the foregoing reasons, Shaw's motion to continue the trial date should be denied.

Respectfully submitted,

Dated: March 3, 2014

<u>s/Douglas M. Werman</u>
Douglas M. Werman
Maureen A. Salas
Sarah J. Arendt
Werman Salas P.C.
77 W. Washington, Suite 1402
Chicago, Il 60602
312-419-1008
Attorney for Plaintiffs

---

[4] Plaintiff Justin Attaway resides in Illinois.