UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

JUSTIN ATTAWAY, SAM FUENTES          )
MARTIN FUENTES, WILLIAM RIVERA,      )
And TEDDY MARRERO, VICTOR E.         )
ALONSO AGUIRRE,                      )
                                     )
            *Plaintiffs*              )
        v.                           )          Civil Action No. 3:11-cv-00803
                                     )
BAY INDUSTRIAL SAFETY SERVICES, INC., )
SHAW ENERGY & CHEMICALS, INC.,       )
JENNIE RICH, and WILLIAM GLENN PARKER, )
                                     )
            *Defendants*              )

**DEFENDANT SHAW'S RESPONSE IN OPPOSITION TO PLAINTIFFS' AND
BAY INDUSTRIAL SAFETY SERVICES, INC.'S JOINT MOTION FOR ENTRY
OF CONFESSION OF JUDGMENT**

## I.      INTRODUCTION

No amount of Plaintiffs' feigned ignorance – or innocence – can camouflage the

reasonable suspicion raised by the Joint Motion for Entry of Confession of Judgment ("Joint

Motion" or "COJ") (Doc. 183).  The Bay Defendants and their counsel appear poised to commit

perjury, violate the rules of professional conduct, abuse the legal process, and do whatever else is

necessary to extricate themselves from this matter, while abandoning ethical principles of

honesty, integrity, and candor to the Court.  The courts and the justice system are intended to

facilitate the finding of truth, not to reward gamesmanship.

In what appears to be a desperate, last ditch effort to escape responsibility for its

contractual indemnification and defense obligation to Shaw, and to eliminate any risk Plaintiffs

will target them for collection of judgment, Bay and its individual Defendants Rich and Parker

appear to have "thrown the fight" by colluding with Plaintiffs not only to confess judgment but to enter stipulations intended to deprive Shaw of its right to a fair jury trial on all disputed issues.

The Joint Motion demands strict scrutiny before entry.  First, it is technically deficient. There is no federal analog for confessions of judgment and Illinois procedural rules require any confessed judgment be for a *sum certain*.  The COJ also purports to stipulate to facts, without any evidentiary support, that will result in liability for both corporate Defendants. [1]  That the proposed Order does more than merely confess judgment reveals Bay's and Plaintiffs' strategy of witnesses poised to offer sham testimony and enter stipulations contrary to record evidence to insure that Shaw will be found to be a joint employer liable for non-payment of overtime to Plaintiffs.  If that occurs, Plaintiffs plan to collect from the only Defendant they believe can afford a judgment, Bay is left to attempt a bad faith bankruptcy rather than indemnify Shaw, and Rich and Parker escape any risk.  Everyone wins except Shaw – and the justice system.

Neither Shaw nor the Court are naïve enough to believe that Plaintiffs' desire to dismiss jointly liable Defendants Rich and Parker just a few weeks before trial (and two years after adding them) out of the "goodness of their hearts" or that poor-as-a-church-mouse Bay was inspired to "come clean" two years *after the fact* to confess to what could be a million dollar judgment by admitting it had violated the FLSA.  Even more incredible is that Plaintiffs would derive comfort from or see any value in a confession by a self-proclaimed, judgment-proof Bay.

Plaintiffs' recent representation to the Court that Bay thrice answered Plaintiffs' Complaint *conceding liability*, raises several law – and logic – defying issues:

---

[1]     Plaintiffs argue in a wholly different submission (Doc. 188/2680) that the stipulations are supported by the evidentiary record, when, in fact, they are <u>refuted</u> by the evidentiary record, including the affidavits of Speicher and Rich.  Again, if these stipulations indeed are undisputed facts upon which a finding for Plaintiffs must be found, as is now claimed to justify the COJ, Plaintiffs would have been granted summary judgment.  They were not.

- If Bay's Answer conceded liability, as Plaintiffs now represent (Doc. 188/2673), then Bay's counsel necessarily violated Rule 11 or 28 U.S.C. § 1927 by litigating a matter *long after* he knew or should have known his clients' defenses were meritless.

- If Bay's Answer conceded liability, then Plaintiffs' counsel also engaged in sanctionable conduct by continuing litigation merely for delay and to unnecessarily increase the cost of litigation rather than move for judgment on the pleadings.

As described below, the Court must re-level the playing field by continuing the trial, clarifying the impact on Shaw and the conduct of trial of Bay's attempt to confess judgment and enter stipulations, denying the motion to dismiss the individual Defendants, and permitting Shaw to conduct limited discovery to alleviate the extreme and certain prejudice to Shaw if "Mary Carter-like" or other agreements and communication between Plaintiffs, Bay, Rich, or Parker are not discovered and disclosed to the jury to expose the bias of witnesses.

## II.    FACTUAL BACKGROUND

The Court is aware of the facts in this case as they pertain to the substantive FLSA issues argued on summary judgment. Accordingly the presentation below is limited to important facts that relate to why the COJ should not be entered, at least as submitted, why the individual Defendants should remain in the case, and why a trial before discovery and full disclosure to the Court and the jury about any deals or agreements between Plaintiffs and Shaw's co-Defendants is unfair.

- Bay was the original, sole Defendant in this matter in November 2011. After narrowly escaping default judgment, Bay proceeded to answer the complaint, set the schedule, and exchange disclosures for four (4) months before Shaw was added.

- Bay's counsel submitted answers to Plaintiffs' First, Second and Third Amended Complaints denying various facts which the stipulations in the Joint Motion now endeavor to admit and which Plaintiffs now claim were admitted long ago. (Doc. 188/2673) Indeed, the Joint Motion itself purports essentially to *withdraw*

3

Bay's answer to the Third Amended Complaint and instead admit the allegations of the Third Amended Complaint.  (Doc 183/2616, Paragraph 4)  Unless Bay's counsel was acting in intentional violation of Rule 11 when he answered the first 3 complaints by denying assertions that he knew to be true, it is legally and factually impossible for Bay's three (3) prior Answers and the COJ stipulations truthfully to co-exist.

- Plaintiffs' counsel has unabashedly admitted on several occasions that Shaw was added primarily for its "deep pockets."

- Bay is contractually obligated to provide indemnification and defense to Shaw. This Court entered a default judgment more than a year ago against Bay on Shaw's cross claim for indemnity and defense.  (Doc. 81)  Bay has made clear on multiple occasions it has no intent or ability to indemnify or defend Shaw, and has no intent or ability to pay any portion of any eventual judgment for Plaintiffs.

- Bay was a temporary staffing agency who received a markup of *50% to 65%* on the wages of Plaintiffs it employed, generous consideration for Bay assuming the risk of any indemnification and defense, providing workers compensation insurance, handling all payroll functions, obtaining Employment Practices Liability Insurance (which Bay failed to do in breach of its contract with Shaw) and promising to compensate Plaintiffs in full compliance with all laws.  Bay's stipulations now disavow that it performed these responsibilities for which Shaw paid Bay hundreds of thousands of dollars to perform.

- Shaw took primary responsibility for the litigation, including taking Plaintiffs' depositions, preparing and prevailing on summary judgment, and preparation of the motions in limine, responses and other pretrial materials.  Shaw did this in reliance on the indemnification and defense agreement which required Bay to reimburse Shaw for Shaw's attorney's fees; because Shaw's law firm, not Bay's counsel, has expertise in FLSA and employment law matters; and because Bay's counsel had made several missteps even before Shaw was added as a Defendant and Shaw desired to avoid any harm imposed by the incompetence of Bay's counsel as litigation progressed.  Indeed even though the COJ Motion is pending and has not been entered, Bay declined to participate in preparing the Final Pretrial Order, presumptuously *assuming* it knows what this Court will do.

- As the litigation proceeded, Bay made statement about being "judgment proof" and threats about bankruptcy to escape its indemnification and defense obligations and to avoid paying any eventual judgment to Plaintiffs.  It became clear that Bay had no intent either to fulfill any judgment to Plaintiffs (if there is one) or to indemnify and defend Shaw per its contractual obligation.  Rather Bay has acted as a party without a "dog in the fight," assuming that if Shaw was found to be a joint employer with joint and several liability, Plaintiffs would not bother to try to collect from penniless Bay, but would devote all collection efforts to Shaw.

4

- If that were not irresponsible and unethical enough, and not wanting to leave anything to chance, Bay apparently has now expanded that passive strategy to an active one. Bay is attempting procedurally to escape responsibility for any liability to Plaintiffs <u>and</u> for all Shaw's defense costs by (1) endeavoring to confess judgment as a way to stipulate to facts that attempt to convince the jury came from a disinterested witness (or at least from a witness adverse to Plaintiffs), (2) by arranging to dismiss individual Defendants, and (3) by convincing its witness Rich to repudiate the statements in her Affidavit presented to the Court as sworn under penalty of perjury,

Although Shaw does not know the specific contours of the agreement or negotiations between Plaintiffs and Bay, or between Plaintiffs and Rich or Parker, or whether there were payments, promises, or other consideration (such as a promise by Plaintiffs not to collect from Bay), it does know that no reasonable Defendant and no attorney providing sound advice would confess a near $1 million dollar judgment <u>unless</u> there was some assurance by Plaintiffs that Bay would be safe from collection of judgment. In exchange for guaranteeing Bay a walk away from the litigation, and for eliminating any personal risk to Rich or Parker (also jointly and severally liable as individuals), Plaintiffs benefit from Rich's testimony to facts and a set of stipulations that all but admit violations of the FLSA at the Marathon job site.

## III.   ARGUMENT

### A.   The Joint Motion And Accompanying Proposed Order Are Technically Deficient Under Applicable Rules And Law

There is no provision under federal law for a confession of judgment. Rather, a confession of judgment is a product of state law. <u>JD Holdings v. BD Ventures</u>, 766 F. Supp. 2d 109 (DC Cir. 2011) (confession of judgment not authorized in federal courts). 735 ILCS 5/2-1301(c) provides that, "Except as otherwise limited by this subsection (c), any person for a debt *bona fide* due may confess judgment by himself or herself or an attorney duly authorized, without process." Illinois case law has interpreted this statute to require that a confession of a judgment be for sum-certain. <u>See</u> <u>Weber v. Powers</u>, 72 NE 1070, 1074 (Ill. 1904) (a judgment

5

by confession must be for a fixed and definite sum); <u>FDIC v. Deglau</u>, 207 F3d 153, 159 (3rd Cir. 2000); <u>Hymen v. Anschicks,</u> 270 Ill. App. 202 (Ill. App. Ct. 1933); <u>D. H. Overmyer Co. v. Frick Co.</u>, 405 U.S. 174, 176 (1972) ("A confession judgment is an ancient legal device by which the debtor consents in advance to the holder's obtaining a judgment without notice or hearing."). Without a sum-certain, Bay is not yet a debtor and Plaintiffs are not yet holders.

Thus, under Illinois law, the COJ requested is technically flawed.  Doc. 183-1 is not a confession for a sum-certain, and thus is improper.  The COJ is more akin to an impermissible confession of fact that can only be established by testimony outside the written document. <u>Weber</u>, 72 N.E. 1074.  It contains conclusions and mere stipulations by a corporate entity, not affidavits or admissible evidence from persons with first-hand knowledge, and thus is hearsay. For example, both Paragraph 5(c) of the COJ and Paragraph 11 of the Joint Motion state that "Plaintiffs are prevailing parties for purposes of an award of attorney's fees and costs."  (Doc. 183-1/2628, Doc. 183/2617) This stipulation cannot be established within the four corners of the COJ, but rather requires admissible evidence.  And, it certainly is not a proper assertion in a Motion. The proposed order (Doc 183-1) impermissibly requests the Court to accept stipulated facts legal conclusion not only unsupported by evidence, but refuted by record evidence.[2]  It cannot be entered as submitted.

**B.**     <u>**All Factors Militate Against The Court Approving Voluntary Dismissal Of Rich And Parker As Defendants Under Rule 41(A)(2)**</u>

Shaw also objects to both the manner and basis of the attempt to dismiss individual Defendants Rich and Parker (who also are jointly and severally liable) by way of the COJ.

---

[2]    For example, the COJ Paragraph 33 states that "Plaintiffs were not guaranteed any minimum amount of pay in each week that they worked."  Paragraph 15 of the Affidavit of Jennie Rich sworn under penalty of perjury August 29, 2013, states: "I arranged with every Plaintiff prior to hiring him that he would be compensated for a minimum of 40 hours per week multiplied by his wage rate."

Under Fed. R. Civ. Proc. 41(a)(2), "Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper . . . Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice."

In Paragraph 7 of the Joint Motion, Plaintiff and Defendants Rich, Parker, and Bay state as a matter of agreement that, "The entry of the Confession of Judgment will terminate this case as to Defendants Jennie Rich and William Glenn Parker, only. Plaintiff's claims against Defendants Rich and Parker are dismissed with prejudice." This is not a Rule 41(a)(2) request for dismissal. Furthermore, it is not up to the moving parties to determine whether such proposed dismissal is with or without prejudice. The presumption under the Federal Rules, and unless the Court rules otherwise, is that even if such dismissal is deemed appropriate, it would be without prejudice. The moving parties, however, in their Confession of Judgment have declared a party-imposed, rather than Court-ordered, dismissal. If the moving parties desired a dismissal of Rich and Parker, such request should have been handled via a separate motion to the Court per the requirements and scrutiny of Rule 41(a) (2).

Regardless of the manner in which a dismissal of Plaintiffs Rich and Parker is requested, such request should be denied. When a plaintiff requests dismissal under Rule 41(a)(2), the court is to look at whether there will be legal prejudice to any defendant if the case is dismissed. Kunz v. DeFelice, 538 F.3d 667 (7th Cir. 2008). The 7th Circuit has identified four factors to examine in determining whether legal prejudice would arise: (1) the defendant's trial preparation effort and expense; (2) delay and lack of diligence by the plaintiff in prosecuting the case; (3) insufficient explanation for the requested dismissal; and (4) whether a summary judgment motion has been filed by the defendant. Id. At least some of these factors are present in this case. Shaw has engaged in significant trial preparation effort and expense, only to now be

informed that Plaintiff wants to dismiss 50% of the Defendants in the case, which considerably changes the landscape for trial and settlement strategy. This *proposed* dismissal significantly impacts this case, particularly since it involves a claim under the Fair Labor Standards Act in which the four current defendants could be found jointly and severally liable. In addition, this request at this late, delayed hour is unacceptable and prejudicial. Although Bay has stated that its position in this case has not changed since it answered the Complaint, in fact Bay has agreed to admit the allegation of Plaintiffs' Third Amended Complaint which Bay previously denied. Certainly that is a major change. Furthermore, discovery in this case closed in September 2013. Why then, is this dismissal being requested at this late date, a month before trial? With respect to the third consideration whether a Rule 41(a)(2) dismissal is proper – "insufficient explanation for the requested dismissal" – not only has there been an insufficient explanation, there has been <u>no</u> explanation. In fact, as discussed below, Shaw must conduct discovery to gain information on this very point.

The dismissal of Rich and Parker was not properly requested by Plaintiffs and is not a decision that can be made unilaterally by them. Dismissal at this stage is a question for the Court, an important and dispositive question the answer to which has potentially adverse and prejudicial impact on Shaw.

**C.**     **The Confession Of Judgment Which Bay And Plaintiffs Urge The Court To Enter Four (4) Weeks Prior To Trial Is A Sham Intended Solely To Inflict Harm On Co-Defendant Shaw And To Deprive Shaw Of Its Due Process Rights To A Fair, Jury Trial On All Issues About Which There Are Disputes**

   **1.**     **Entering the Confession of Judgment absent a sum certain and without allowing Shaw leave and time to conduct limited additional discovery creates significant potential for mistrial and appeals.**

Courts routinely require disclosure of agreements between Plaintiffs and co-Defendants to the jury, as should occur here. However, even that is insufficient to cure the prejudice to

Shaw, who is not a party to any agreement or privy to any communications or communications about the COJ.  Even if Shaw uses evidence of the Plaintiff-Bay-Rich-Parker deal(s) to impeach and discredit witnesses, Bay still has in its toolbox its peremptory challenges, leading questions to examine witnesses who are not really adverse, and opening and closing to undermine Shaw's defense.

Attempted confessions of judgment and their underlying agreements increase the likelihood of post-trial attacks on verdicts alleged to have been unfairly obtained as the result of such agreements.  See Packaging Corporation of America v. DeRycke, 49 So.3d 286, 293 (Fl. Ct. App. 2010) (reversing a jury verdict where an agreement between the plaintiff and co-defendant that had the co-defendant confessing liability in exchange for plaintiff foregoing the right to seek a judgment in excess of co-defendant's insurance coverage was not disclosed to the jury); Goodyear Tire & Rubber Co. v. Ross, 660 So.2d 1109, 1110 (Fla. Ct. App. 1995) (reversing and ordering a new trial where the jury was denied information regarding the settlement agreement between the plaintiff and one of the defendants); Dosdourian v. Carsten, 624 S.2d 241, 247 (Fla. 1993) ("The integrity of our justice system is placed in question when a jury charged to determine the liability and damages of the parties is deprived of the knowledge that there is, in fact, no actual dispute between two out of three of the parties."); Hatfield v. Continental Imports, Inc., 610 A.2d 446, 451-52 (Penn. 1992) (reversing jury verdict where evidence of an agreement between the plaintiff and one of the defendants was excluded); General Motors Corp. v. Simmons, 558 S.W.2d 855, 859 (Tex. 1997), overruled on other grounds by Duncan v. Cessna Aircraft, Co., 665 S.W.2d 414 (Tex. 1984); Reese v. Chicago, Burlington & Q.R. Co., 303 N.E.2d 382, 387 (Ill. 1973) (reversing a jury verdict where the jury was unaware that a co-defendant had provided a "loan" to the plaintiffs in exchange for a covenant not to collect against

the defendant).  It simply is not possible to ensure a fair trial for a Defendant like Shaw when this type of agreement is involved.

    **2.**      **Any ethical and/or legal collusion must be investigated, revealed, and examined after discovery and before trial on any arrangements or agreements between Plaintiffs and Bay, Rich and Parker.**

Agreements are valid only where there is no evidence of collusion, bad faith, and detriment to the other, non-settling party (all three of these are implicated here).  See Chicago Miracle Temple Church, Inc. v. Fox, 1994 WL 186751, at *2 (N.D. Ill. May 11, 1994) (rejecting a consent decree that interfered with a co-defendant's legal right to a set-off); In re Guardianship of Babb, 642 N.E.2d 1195, 1207 (Ill. 1994) (holding that a loan receipt agreement between the plaintiffs and a co-defendant violated Illinois' contribution laws and, therefore, was not in good faith and was invalid).  One of the reasons for this is that such agreements by their nature promote unethical lawyer practices.  At trial, the judge and jury presume Plaintiffs and Defendant Bay are adversaries and that Plaintiffs are *truly* seeking judgment against all Defendants.  However, in order to carry out the objectives of the agreement, Bay must necessarily make misrepresentations to the Court and to the jury in order to maintain the charade of an adversarial relationship.  This risks high potential for perjury, confuses the jury, and permits Bay to evade equitable sharing of liability.

Moreover, the circumstances under which this COJ has been entered create a counterclaim for abuse of process against Plaintiffs, Bay, Rich, and Parker.  The available evidence establishes that Plaintiffs, Bay, Rich, and Parker entered into this purported COJ just a month before trial was set to begin.  The COJ is based on information and evidence that Plaintiffs allege was available to them two years ago.  Yet Plaintiffs' counsel rejected Bay's offer of $75,000 to $100,000 to resolve the case (before Plaintiffs added Shaw to the case and when he

had incurred only $8,000 in attorney's fees) and then preferred to spend two years driving up their attorneys' fees and costs. Shaw should be permitted to amend its Answer and assert counter- and cross-claims against Plaintiffs and Bay, Rich, and Parker. This will permit Shaw to conduct discovery on (1) all communications between Plaintiffs, Bay, Rich, and Parker regarding this COJ; (2) the finances of Bay, Rich, and Parker; (3) the potential perjury committed by Rich and/or Parker; (4) Plaintiffs' potential efforts to suborn perjury to support its COJ; and (5) when these parties reached an agreement to enter into the COJ. Shaw will file a separate lawsuit if necessary. The more efficient course of action, however, is to continue the trial, allow Shaw to complete discovery limited to the COJ and its counter- and cross-claims, and reschedule the trial to address all claims in one action.

By virtue of this agreement, Bay in practical and legal effect has a financial interest in the trial's outcome should the jury rule favorably for the Plaintiffs. Thus, rather than cooperating with Shaw to minimize culpability of all Defendants and to minimize the jury's assessment of Plaintiffs' damages, the COJ stipulations and Rich's testimony (which presumably will be consistent with those stipulations) actually would influence the jury to saddle Shaw with the full damages Plaintiffs will request.

**D.**     **Entry Of Confession Of Judgment Absent A Sum Certain And Without Allowing Shaw To Discover The Bay Defendants-Plaintiffs Arrangements And Facts That Reveal Witness Bias And Prejudice Will Jeopardize A Fair Trial**

Underlying the Confession of Judgment is clearly an agreement in the "Mary Carter" category. It is "an agreement between a Plaintiff and one Defendant allying them against another Defendant at trial." See Vogel v. Wells, 566 N.E.2d 154 (Ohio 1991). No reasonable Court, attorney, or party could remain oblivious to the obvious understanding that Plaintiffs have no intention to enforce judgment against settling Defendant Bay. It's a profoundly simple

11

proposition – Bay conspires to aid the Plaintiffs' case and in exchange, Bay, its owner (Parker), and its manager (Rich) are relieved of all risk of liability.

Shaw's need for discovery is not to examine Rich and Parker on FLSA issues, but to discern what agreements or deals were made to dismiss the individuals and to protect Bay from collection.  If nothing else, the timing of the Joint Motion raises reasonable suspicion--a suspicion that Shaw is entitled to explore and that justice and fairness demand.  After all, Plaintiffs' boasted that Bay's liability was "always a *fait accompli*" (Doc. 188/2673) but waited two years to mention or move for entry of a confession of judgment.  All Shaw is asking is that it be allowed to know the "back story" of why Bay is attempting to confess judgment now and why Rich and Parker were let "off the hook" a month before trial.  It needs time and the Court's permission to do so.

     **1.**      **<u>Shaw must be permitted to conduct discovery on the circumstances surrounding the confession of judgment.</u>**

Bay's Confession of Judgment raises enough discoverable issues that any entry of judgment should be granted only if Shaw is provided sufficient time to discover the facts surrounding Bay's sudden decision to confess to liability after more than two years of litigation. Bay's Mary Carter-like agreement raises a host of issues that go to the heart of Bay's credibility and true motivations in this case. In multiple-party litigation, courts are justifiably suspicious of a co-defendant that suddenly confesses all liability but remains in the case to presumably help the plaintiffs build a case against the remaining defendant.  See <u>Elbaor v. Smith</u>, 845 S.W.2d 240, 249 (Tex. 1993) (holding that these types of arrangements "present to the jury a sham of adversity between the plaintiff and one co-defendant, while these parties are actually allied for the purpose of securing a substantial judgment for the plaintiff").  Several courts have questioned the ethical nature of such arrangements and have questioned whether such agreements violate the

12

attorney's ethical duties of candor towards the court and the jury.  See Elbaor, 845 S.W.2d at

250; Lum v. Stinnett, 488 P.2d 347, 352-53 (Nev. 1971).  Arrangements, like those presumed

between Plaintiffs and Bay in this matter, "skew the trial process, mislead the jury, promote

unethical collusion among nominal adversaries, and create the likelihood that a less culpable

defendant will be hit with the full judgment."  Elbaor, 845 S.W.2d at 250.  They also violate

public policy to the extent that "the burden of loss shifts to the less blameworthy defendant in

that the agreeing defendant will usually be willing to offer more to the plaintiff under such an

agreement and thus escape responsibility for his proportionate share of damages or hopefully

escape liability altogether."  Cox v. Kelsey-Hayes Co., 594 P.2d 354, 359 (Okla. 1979).

Courts faced with a co-defendant that suddenly realigns itself with the plaintiff's version

of events routinely grant the remaining defendant the right to explore the circumstances

surrounding the co-defendants sudden about-face and impeach the co-defendant's bias and true

motivations.  See e.g., Hoops v. Watermelon City Trucking, Inc., 846 F.2d 637, 641 (10th Cir.

1988) (holding no error only where the remaining defendant was allowed to cross-examine the

plaintiff on his agreement with the co-defendant and argue the effect of the agreement to the

jury); Goodyear Tire & Rubber Co. v. Ross, 660 So.2d 1109, 1110 (Fla. Ct. App. 1995) (holding

that the jury should have been informed about the agreement between the plaintiff and one of the

defendants); Sierra Rutile Ltd. v. Katz, 1994 WL 577888, at *4 (S.D.N.Y. Oct. 19, 1994)

(holding that the remaining defendant would be allowed to cross-examine and impeach the

testimony of the co-defendant and inquire into any issues of collusion or perjury at trial); Cox,

594 P.2d at 359 ("Courts and commentators, recognizing the substantial prejudice to the non-

agreeing defendants, are nearly unanimous in their belief the agreements must be disclosed prior

to trial and, if the agreeing defendant's maximum liability will be reduced by increasing the liability of his co-defendant, the jury must be informed of the contents of the agreement . . .").

In fact, failure to allow the remaining defendant to disclose the facts of any arrangement between plaintiff and a co-defendant is reversible error in most cases.  See e.g., Packaging Corporation of America, 49 So.3d at 293;  Goodyear Tire & Rubber Co., 660 So.2d at 1110; Dosdourian v. Carsten, 624 S.2d at 247;  Hatfield v. Continental Imports, Inc., 610 A.2d at 451-452;  General Motors Corp. v. Simmons, 558 S.W.2d at 859), Reese v. Chicago, Burlington & Q.R. Co., 303 N.E.2d at 387.

Any agreement, arrangement, or other communication between Plaintiffs and the Bay Defendants is subject to disclosure and Shaw must be given an opportunity to conduct limited discovery to ascertain the facts surrounding Bay's sudden, enthusiastic interest in confessing to liability and stipulating to facts that have been contested, including *by Bay*, for more than two years.  A jury usually assumes that parties and their counsel are motivated by the obvious interest each has in the litigation.  That assumption is no longer valid when some but not all of the parties have made an arrangement to the contrary prior to trial.  The fairness of the legal system is undermined when the alignment of interests in the litigation is not what it appears to be.  Jurors also are deceived by being informed that they are resolving an existing dispute between several parties that have already resolved their differences.  This jeopardizes the integrity of the jury system.  Even if parties and counsel conduct themselves with honesty and integrity, a cloud of doubt remains over the proceedings because of information withheld from jury.

Moreover, Bay can retain its influence upon the outcome of the lawsuit because Plaintiffs only seek to dismiss the individual defendants, not Bay, from the trial.  Bay could participate in jury selection, present witnesses, cross-examine witnesses, and argue the merits of evidentiary

objections at trial.  Bay can combine its combatant energies with Plaintiffs to build a case against
Shaw in an attempt to coerce Shaw into a settlement for sums in excess of that which would
otherwise be proportional out of Shaw's fear that it will be subject to an unfair trial.  This is
especially true where Bay seeks to avoid Plaintiffs' attempts to collect against Bay, since Bay
has repeatedly warned that it will not be able to indemnify Shaw in the future.  Indeed, this is the
probable strategy of this late-filed Motion for Entry of Confession of Judgment.  On
February 25, 2014, in almost the same breath as advising Shaw's counsel that the Joint Motion
would be filed that day, Plaintiffs' counsel suggested a large settlement by Shaw would be the
preferred and most expedient response and suggested that Shaw also confess judgment.  Shaw
respectfully declined.

All of the potential abuses arising from the type of arrangement between Plaintiffs and
Bay necessitate limited discovery by Shaw to obtain any information needed to enlighten the jury
as to Bay's bias and true motivation and that of the individual Defendants Rich and Parker.
Limited written discovery is needed to ascertain the nature of the arrangement between Plaintiffs
and Bay and to collect documents between the two parties and their counsel discussing the
possibility and plans for Bay confessing to judgment, and the timing of such agreement.
Depositions of Jennie Rich and William Glenn Parker are necessary to get to the heart of their
agreement with Plaintiffs and whether there is any *quid pro quo* between them and Plaintiffs.
Such discovery is necessary to fully inform the jury and avoid the severe prejudice to Shaw of
such an agreement.

If in fact Plaintiffs' fervent assurances that there were <u>no</u> promises by Bay or Plaintiffs to
do – or not do – anything in the future are true, then there will be no harm in allowing Shaw to

confirm that.  However, Shaw understandably is loathe simply to take Plaintiffs' counsel's word for it, given that the recent turn of events appears to be of greatest benefit to Plaintiffs.

**E.**   **The Court Must Act To Prevent Prejudice To Shaw And To Ensure A Fair And Orderly Trial**

In the interest of justice, to prevent unfair prejudice to Shaw, to uncover legal and /or ethical collusion between the Bay Defendants and Plaintiffs, to avoid a potential mistrial, to prevent abuse of the Court system, to prevent fraud upon the court, to expose bias, prejudice, and perjury of witnesses who are inherently self-interested and financially-affected, and to demand from Plaintiffs' counsel and Bay's counsel the duty of candor to the tribunal and the duty of fairness to opposing party and counsel required by the Rules of Professional Conduct, the Court should continue the trial and order the following, *before* it grants or denies the Joint Motion for Entry of COJ.

**1.**   **The proposed stipulated facts in the COJ should be stricken.**

Bay may be able to concede liability in this case, and has a right to forego a trial on its own liability, but it does not have the right to sabotage Shaw's right to a trial on those issues. Once liability is conceded by a co-defendant, like Bay proposes to do here, it typically has no incentive to actively defend the case.  It is no longer in Bay's interest to put forth any further effort; this itself can adversely impact Shaw.  Even "[s]imple inaction on the part of one defendant can adversely affect the co-defendant" and these types of agreements are "used purposely to defeat any system of equitable sharing and to shift liability to the nonsettling defendant through manipulation of the trial process."  Dosdourian, 624 S.2d at  245.

However, Bay has not proposed to just sit idly by and remain silent during the trial. Instead, it proposes to have the Court judicially affirm a set of proposed stipulated facts that are contained in the  proposed Confession of Judgment – many of which go to the heart of Shaw's

defense in this case and will be vigorously contested by Shaw at the trial.  The proposed stipulation of facts attempts to saddle Shaw with full liability and impairs Shaw's ability to argue non-liability on the classification issue, the salary basis, joint employment, and good faith for liquidated damages.   Not only does the Joint Motion to Enter Confession of Judgment contain no evidence to support the contested facts (several of which are not facts at all, but conclusions), but Plaintiffs and Bay provide no legal justification for their request to have the Court put its seal of approval on the statements as if they are uncontested facts in this matter.

The proposed stipulation of facts is not necessary for the confession of judgment – Bay can stipulate to liability in this action without agreeing to any set of facts.  Given that the statement of "facts" are not necessary to Bay's confession of liability, the purpose of the proposed stipulations  can only be an attempt to prejudice the jury against Shaw by having the Court judicially affirm these statements as undisputed facts (they are not) and read them to the jury during the trial.  Such an attempt to manipulate the jury is improper.  Where two of three parties submit an agreement that materially affects the legal rights of the third non-agreeing party, courts typically reject the agreement's validity.  See Chicago Miracle Temple Church, Inc. v. Fox, 1994 WL 186751, at *2 (N.D. Ill. May 11, 1994) (rejecting a consent decree that interfered with a co-defendant's legal right to a set-off); In re Guardianship of Babb, 642 N.E.2d 1195, 1207 (Ill. 1994) (holding that a loan receipt agreement between the plaintiffs and a co-defendant violated Illinois' contribution laws and, therefore, was not in good faith and was invalid).

Similarly, the Court here should reject Plaintiff and Bay's attempt to circumvent Shaw's indemnification agreement with Bay and materially hinder Shaw's ability to defend itself on the liability issue before a jury.  The Court should decline to approve the stipulations of "fact"

proposed by Plaintiffs and Bay in Doc. 183-1 and merely take note of Bay's stipulation to liability in this case and then <u>only</u> when and if Bay properly confesses to judgment of a sum-certain.

**2.** **<u>Shaw should be allowed to conduct additional discovery related to any agreements, arrangements, communication, and exchange of consideration related to Plaintiffs, Bay, Rich, and Parker.</u>**

Shaw should be allowed time and opportunity to conduct discovery including limited interrogatories and requests for production of documents relating to timing, initiation, and implementation of the COJ, to discover documents and communications between Plaintiffs' counsel and the Bay Defendants' counsel, and any communication between Plaintiffs' counsel and Rich and Parker.  That evidence is admissible under the exception to FRE 408(b) to prove witness bias or prejudice.  In fact, Courts have even suspended the attorney client privilege to uncover agreements underlying confessions of judgment, to identify any fraud, collusion, or other wrongdoing.

As owner of Bay Industrial, Parker is an FLSA "employer" with *individual* liability to Plaintiffs.  Shaw is entitled to depose him to establish bias and self-interest, for himself and his Company.  Further, Rich also is an "employer" per FLSA definitions with potential individual liability to Plaintiffs.  Shaw is entitled to depose her in her now adverse/hostile state to establish her bias and self-interest, especially in light of inconsistencies in her affidavit presented under penalty of perjury which Affidavit directly contradicts most of the stipulations that are presented in the proposed COJ order and in the Plaintiffs proposed, Joint Pre-Trial Memorandum and which foreshadow her expected testimony at trial.

## IV.   <u>CONCLUSION</u>

In effect, the Joint Motion seeks to snatch from the jury its fact finding role, and replace it with stipulations, drafted and agreed to by Plaintiffs and <u>one</u> Defendant who have become strange bedfellows.  Taken to its logical, legal conclusion, if Bay *sincerely* desires to confess judgment because it *sincerely* believes it violated the law, and *sincerely* is committed to satisfying that judgment, it can and must do so for a sum certain, at which time there should be no need for a trial at all – the Court can enter Bay's confession of judgment, dismiss Shaw (whose presence in the case is then moot), award Plaintiffs the full and finite damages they have clamored for over two (2) years, and fulfill Plaintiffs' counsel's desire for well more than half a million in attorney's fees.

Shaw is not arguing that Plaintiffs and Bay, or Plaintiffs and the individual Defendants Rich and Parker, are not entitled to enter into request for Entry of Confession of Judgment. Those are strategic decisions on their part.  Shaw's only concern is to the extent such agreements impact Shaw and its right to a transparent, fair jury trial.  If Bay wishes to confess judgment (a tactic more of style than substance given Bay's *self-proclaimed* judgment-proof status) and if Plaintiffs wish to accept a confession of judgment they know is worth no more than the paper it is printed on, so be it.  But to the extent those questionable—and potentially unethical or sanctionable-- decisions implicate the trial proceedings, it <u>is</u> Shaw's business.

For all the aforementioned reasons, the Court should continue the trial, require a technically and legally sufficient Confession of Judgment, require Bay and Parker to remain as individuals in the case, and allow Shaw leave and time to conduct discovery about any and all arrangements and agreements between and among Plaintiffs, Bay, and either or both individual Defendants.

Respectfully submitted, [3]

Ogletree Deakins Nash Smoak & Stewart, P.C.

By:____s/ Jan Michelsen_____
        Jan Michelsen, IN Bar No. 18078-49
        111 Monument Circle, Suite 4600
        Indianapolis, Indiana  46204
        Telephone:  317.916.1300
        Facsimile:  317.916.9076
        *jan.michelsen@ogletreedeakins.com*

Attorneys for Defendant
Shaw Energy & Chemicals, Inc.

---

[3]    The Plaintiffs and Bay filed their Joint Motion on February 25, 2014.  Pursuant to the Local Rules, Shaw had until March 11, 2014 to respond.  However, due to the scheduling of the March 6 hearing, the Court requested and preferred that Shaw submit its briefing five (5) days early and Shaw has done so, concurrent with meeting the Court's pre-trial deadlines and participating in drafting the Joint Pre-Trial Memorandum.  However, by this submission Shaw does waive any right to request it be allowed the full response period to provide supplemental briefing should that be necessary after the March 6 hearing.

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing *Defendant Shaw's Response in Opposition to Plaintiffs' and Bay Industrial Safety Services, Inc.'s Joint Motion For Entry Of Confession of Judgment* has been filed electronically, this 6th day of March, 2014. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Douglas M. Werman
Werman Law Office, P.C.
77 West Washington
Suite 1402
Chicago, Illinois  60602
dwerman@flsalaw.com

Robert Doyle Wilson
Law Offices of Robert D. Wilson, PC
18111 Preston Road
Suite 150
Dallas, Texas  75252
rwilson@wilsonlawtexas.com

Richard J. (Rex) Burch
Bruckner Burch PLLC
8 Greenway Plaza
Suite 1500
Houston, Texas  77046
rburch@brucknerburch.com

s/ Jan Michelsen
Jan Michelsen

17227364.1